Norman B. JOHNSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 393–86C.

United States Claims Court.

July 14, 1988.

Robert D. Scholz, Portland, Or., for plaintiff.

Brian A. Mizoguchi, Washington, D.C., with whom was Asst. Atty. Gen., John R. Bolton, for defendant. Jim Kauble, Dept. of Agriculture, Portland, Or., of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action came before the court on cross motions for summary judgment pursuant to RUSCC 56. Plaintiff sought summary judgment finding defendant liable for breach of contract to lease office and related use space. Defendant cross-motioned for summary judgment and claimed that no valid contract ever existed. The Claims Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1491 (1982).

## FACTS

On March 13, 1984, defendant issued a Solicitation For Offers (solicitation) in order to obtain office and related use space. The solicitation specified, among other things, that the due date for submitting offers was April 19, 1984 and that all offers submitted must remain open until September 17, 1984. Defendant received four timely offers in response to its solicitation, including, plaintiff's. Upon evaluation, plaintiff's offer received an evaluation second only to the offer of Dale and Rose Nye. By a letter dated July 9, 1984, plaintiff revised its first offer with one which (1) contained terms less favorable to defendant, and (2) limited its time for acceptance by defendant to a point in time prior to September 17, 1984. Notwithstanding these defaults, on or about July 23, 1984, defendant sent a letter to plaintiff accepting plaintiff's revised offer. Plaintiff acknowledged receipt of this Notice of Lease Award on August 3, 1984.

Around July 23, 1984, Dale and Rose Nye began to investigate the basis for the rejection of their offer. After several meetings with defendant, defendant determined that it had mistakenly rejected the Nye offer. Defendant also was in the process of reassessing its needs and had anticipated that it did not need as large a facility. Accordingly, defendant informed plaintiff, by letter dated November 9, 1984, that award of the contract to plaintiff had been made in error and that the resultant contract was terminated for the convenience of the government.[1] There was no clause in either the solicitation or the accompanying agreements which authorized defendant to terminate the contract for convenience.

Pursuant to the terms of the solicitation, and in accordance with the Contracts Disputes Act, 41 U.S.C. § 605 (1982), plaintiff submitted a claim for damages to defendant on December 2, 1985. Plaintiff never received a decision from the contracting officer responsive to its claim. Having received no decision within 60 days of its claim, plaintiff brought suit in this court. 41 U.S.C. § 605(c)(5). Thereafter, plaintiff moved for summary judgment on the issue of liability. In its motion for summary judgment, plaintiff alleged that defendant's acceptance of plaintiff's revised offer created a binding contract which defendant terminated prematurely. Plaintiff further alleged that defendant's termination for convenience was an insufficient basis for termination because the contract did not explicitly provide for termination for convenience nor could termination for convenience properly be incorporated into the contract by operation of law. G.L. Christian & Assocs. v. United States, 160 Ct. Cl. 1, 312 F.2d 418, cert. denied, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). Accordingly, plaintiff contended that defendant's termination constituted a breach of contract. This breach, plaintiff asserted,

---

1. In defendant's letter of November 9, 1984, wherein defendant terminated the contract with plaintiff, defendant said, directly following the statement of termination, that "[t]he Olympic National Forest personnel are in the process of reassessing their needs, and it is anticipated that on completion of this assessment the project will be readvertized in 1985." Because this does not appear to be stated as a justification for termination and because the contract between plaintiff and defendant was a nullity, this court does not reach the issue of whether a change in government needs would have justified a termination in the present situation.

rendered defendant liable for all of plaintiff's resulting damages including its expenditures, losses, and anticipated profits.

In defendant's response to plaintiff's motion and concurrent cross-motion for summary judgment, defendant contended that the contract with plaintiff never legally came into being. Instead, defendant contended, it was void as an illegal contract based upon the late offer, which offer could not legally be accepted. Defendant further contended that had the contract been binding, termination was proper because plaintiff had been in default at the time of cancellation and defendant had the right to terminate in order to protect public confidence in the fairness of the procurement process and to insure that all offerors' proposals were evaluated properly.

Plaintiff responded to defendant's cross-motion by asserting that plaintiff had not been in default but instead had been preparing to deliver the premises to defendant by the specified date. In addition, plaintiff contended that defendant ought to be precluded from asserting illegality of contract for the first time in its response and cross-motion because RUSCC 8(c) requires illegality to be raised as an affirmative defense in the initial pleadings. Defendant asserted that the issue of whether this court had jurisdiction made illegality of contract an issue by implication because plaintiff was required to plead and prove the existence of a contract in order for this court to have jurisdiction, and defendant had argued in its answer to plaintiff's complaint that a binding contract never existed. Further, defendant moved to amend its answer if this court found that illegality needed to be pled in the initial pleadings in order for it to be considered on these motions.

## DISCUSSION

Summary judgment is only available where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). Any doubts as to whether a genuine issue of material fact exists must be settled in favor of the non-moving party. *Housing*

*Corp. v. United States,* 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972); *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983). Inferences drawn from the proposed facts must also be viewed in a light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Ball v. United States,* 1 Cl.Ct. 180, 183 (1982). In conjunction with the parties' cross-motions, each has submitted proposed uncontroverted facts and statements of genuine issues.

All the disputed issues raised by the parties hinge on two main issues: (1) whether defendant's purported acceptance of plaintiff's revised offer was binding on either of the parties; and (2) whether plaintiff was actually capable of performing the lease according to its terms. Neither of these disputed issues, however, create an obstacle to this court in reviewing the motions for summary judgment. The first disputed issue does not act as a barrier to this court because, as defendant correctly noted, it is an issue of law, not an issue of fact, and issues of law are properly decided on motion for summary judgment. RUSCC 56(c). Likewise, the second issue does not deter this court from reviewing these motions because, though it is a disputed issue of fact, it is irrelevant to what the court believes is the dispositive analysis and decision. *See Housing Corp.,* 199 Ct.Cl. at 710–11, 468 F.2d at 925. Therefore, this court finds that, in relevant part, the parties' proposed facts are in harmony and no genuine issue of material fact exists.

As a preliminary matter, plaintiff asserted that defendant could not terminate for convenience because there was no clause allowing for such termination in the offer, instructions, or relevant regulations. It is made clear by 41 C.F.R. (FPR) § 1–1004–1 (1984) that the Federal Procurement Regulations apply to leases of real property only to the extent specifically stated. Although 41 C.F.R. (FPR) § 1.8000 (1984) provides for the insertion of termination for convenience clauses into government contracts,

it does not explicitly state that such clauses are applicable to leases of real property. In addition, 41 C.F.R. § 4–4.502 (1984) makes termination provisions optional, but not necessarily preferred. Accordingly, this court is unaware of any relevant regulations which would allow defendant to terminate for convenience. Furthermore, defendant does not attempt to refute plaintiff's contentions concerning defendant's inability to terminate for convenience. Therefore, this court refuses, at this time, to insert into the disputed contract such a provision by operation of law. *Cf. G.L. Christian & Assocs. v. United States,* 160 Ct.Cl. 1, 14, 312 F.2d 418, 425, *cert. denied,* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963) (a court may read into a contract a termination for convenience clause when relevant statutory or regulatory provisions require such a clause to be included in an agency's contracts).

■ Also, as a preliminary matter, plaintiff contended that RUSCC 8(c) precluded defendant from raising the affirmative defense of illegality in its reply and cross-motion for summary judgment when defendant had not raised that defense in its answer to plaintiff's complaint. This issue is now moot. While this court acknowledges that RUSCC 8(c) would require illegality to be pled in the answer, the court requested that the issue of illegality in the contract procurement and award be addressed by both parties at oral argument. Illegality is an issue properly before the court. This court does not now prejudice either party by resolving that issue. In addition, plaintiff's contention would amount only to a delay of proceedings because this court is compelled to "freely" grant a party leave to amend its pleading "when justice so requires." RUSCC 15(a).

■ The court now turns to the merits of whether a binding contract was created by the parties. Defendant's solicitation did not hold price as the all-controlling factor in determining which offer was most advantageous. Offers were judged by considering both price and technical merit, including location, access, and services provided. Defendant's solicitation was, there-fore, not a typical invitation for bids; nor was it a typical request for proposals. Instead, it was, by defendant's admission, a hybrid of the two which does not fit within either line of case law governing invitations for bids or requests for proposals. The court views the solicitation, at least as to these issues, as more akin to an advertised contract than a negotiated one. Accordingly, this court turns to the face of the solicitation, its accompanying agreements, and relevant regulations for direction.

Defendant's solicitation unambiguously stated that all offers for providing leased premises would be received "until 11:00 A.M. April 19, 1984" and that all offers were required to "remain open until September 17, 1984." The solicitation further explicitly addressed late offers by incorporating paragraph seven of the Lease Solicitation Instructions & Conditions (instructions). Paragraph seven of the instructions coincides with 41 C.F.R. (FPR) § 1–3.802–1 (1982) which state in relevant part:

LATE PROPOSALS, MODIFICATIONS OF PROPOSALS, AND WITHDRAWALS OF PROPOSALS

(a) Any proposal received at the office designated in the solicitation after the exact time specified for receipt will not be considered unless it is received before award is made, and:

(1) It was sent ... not later than the fifth calendar day prior to the date specified for receipt of offers ...

(2) It was sent ... [and] the late receipt was due solely to mishandling by the Government after receipt at the Government installation, or

(3) It is the only proposal received.

(b) Any modification of a proposal ... is subject to the same conditions as in (a)(1) and (a)(2) of this provision.

\*     \*     \*     \*     \*     \*

(e) Notwithstanding (a), (b) and (c), of this provision, a late modification of an otherwise successful proposal which makes its terms more favorable to the Government will be considered at any time it is received and may be accepted.

Though plaintiff's revised proposal does not fit within any of the express exceptions, plaintiff nonetheless submitted it on or about July 9, 1984 intending for it to supersede its original offer of April 18, 1984. Plaintiff's revised offer was several months delinquent and presented terms less favorable to defendant, having a higher lease rate and offering fewer services than plaintiff's initial proposal. Therefore, plaintiff's revised proposal was not in compliance with the specific limitations stated in the solicitation, instructions, and relevant regulations. Furthermore, plaintiff's revised offer did not comply with the solicitation requirement that an offer must remain open until September 17, 1984. Plaintiff's revised offer stated that its terms were only "good for sixty (60) days" from its stated date of July 9, 1984. Sixty days from July 9 fell on September 7, ten days before the allowed closure date. Though this violation did not inhibit defendant, as defendant purported to accept plaintiff's revised offer within that sixty day limitation period, the sixty day limitation on plaintiff's revised offer made that offer, in essence, nonresponsive to defendant's solicited procurement. *Cf. Prestex Inc. v. United States*, 162 Ct.Cl. 620, 625–26, 320 F.2d 367, 371–72 (1963) (where plaintiff's bid, in response to an advertised procurement, was deemed nonresponsive because it deviated from the advertised specifications). As a result of these violations, defendant's purported acceptance of plaintiff's revised offer was erroneous and the alleged resultant contract was a nullity. *See United States v. Amdahl*, 786 F.2d 387, 392–93 (Fed.Cir.1986); *Alabama Rural Fire Ins. Co. v. United States*, 215 Ct.Cl. 442, 454, 572 F.2d 727, 733 (1978); *Schoenbrod v. United States*, 187 Ct.Cl. 627, 410 F.2d 400 (1969).

In reaching this decision, the court is guided by two United States Court of Claims decisions. In *Schoenbrod*, the government solicited proposals for processing and selling Alaska sealskins. The applicable procurement regulations required that the government procurement be made on a competitive basis and that price comparisons be a consideration in awarding the contract. The government nonetheless awarded the contract to an offeror who was selected on grounds unrelated to pricing considerations. The government later rescinded its award because the government had failed to comply with the procurement regulations. Suit was then filed in the Court of Claims and each party subsequently moved for summary judgment. The Court of Claims concluded that because the procurement and award were made in plain contradiction to the relevant regulations, the award and the resulting contract were invalid. *Schoenbrod*, 187 Ct.Cl. at 634, 410 F.2d at 404. In the present action, as in *Schoenbrod*, defendant did not comply with the procurement standards. Defendant awarded plaintiff the contract in plain contradiction to the relevant solicitation instructions.

*Alabama Rural* addressed the issue of whether it was permissible for a plaintiff to contract with the government to provide insurance outside of the state of Alabama when to do so would violate both the Rural Rehabilitation Corporate Trust Liquidation Act, Pub.L. No. 81–499, ch. 152, 64 Stat. 98 (1950) (codified in 40 U.S.C. § 440 (1970) (omitted as executed)), and the relevant federal procurement regulations. The government had initially awarded the contract to Alabama Rural. However, after reassessing the award, the government rescinded the contract. Alabama Rural then brought suit seeking damages for that rescission. Cross-motions for summary judgment were subsequently filed by both parties. The Court of Claims, in ruling on the motions, declared the alleged contract a nullity. The court stated that the liability of the government depended upon the legality of the contract. Legality, the court held, is determined by whether the making of the alleged contract complied with legislative history or other agreements restricting a party's ability to contract. *Alabama Rural*, 215 Ct.Cl. at 454, 572 F.2d at 733.

In the present action, defendant's solicitation expressly required that offers for furnishing the leased space would be received only until 11:00 a.m. on April 19, 1984 and that late offers or modifications

would not be considered, except in the certain specified situations indicated. Plaintiff nonetheless submitted a revised offer containing less favorable terms on July 9, 1984, eighty-one days after the specified deadline for submitting offers and amendments. Defendant, therefore, could not legally accept plaintiff's revised offer because that offer did not comply with the terms of the solicitation which restricted defendant's ability to contract. *Amdahl*, 786 F.2d at 392–93; *Alabama Rural*, 215 Ct.Cl. at 454, 572 F.2d at 733.

The long established law governing contracts requires this court to void contracts that are illegal, *Amdahl*, 786 F.2d at 393; *Schoenbrod*, 187 Ct.Cl. at 634–35, 410 F.2d at 404, no matter how that illegality of contract is established. *Alabama Rural*, 215 Ct.Cl. at 454, 572 F.2d at 733. When illegality is established in the contract procurement or award, the contract is precluded from ever arising. *Amdahl*, 786 F.2d at 392–93; *Alabama Rural*, 215 Ct.Cl. at 454, 572 F.2d at 733. On the other hand, when the illegality is not plain, clear, and obvious to the participants nor of a substantial nature, the successful participant should be given the benefit of any reasonable doubt and the contract award ought to be enforced despite apparent deviations. *John Reiner & Co. v. United States*, 163 Ct.Cl. 381, 386–87, 325 F.2d 438, 440–41 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964) (alleged illegality, based on the fact that the procedures used were not as well-attuned to the aims of the competitive bidding legislation as they could have been, was not sufficient to render the contract void); *see Trilon Educ. Corp. v. United States*, 217 Ct.Cl. 266, 578 F.2d 1356 (1978) (alleged illegality, based upon the fact that the president of plaintiff's parent corporation was convicted of fraud in a different government contract, did not void the contract even though the procurement required that the award go to a responsible party); *see generally Prestex*, 162 Ct.Cl. at 627, 320 F.2d at 372 ("[D]eviations may be waived by the contracting officer provided they do not go to the substance of the bid or work an injustice to other bidders."). In the present action,

however, the court finds that no contract ever arose between plaintiff and defendant. The alleged contract was void *ab initio* because the illegality of plaintiff's revised offer and defendant's acceptance was plain, clear, obvious, and substantial. Accordingly, defendant's award and the resulting contract were of no effect nor consequence to either party.

■ Plaintiff also asserted that defendant is estopped from asserting that plaintiff's revised offer was illegal because plaintiff, before submitting its revised offer, spoke with defendant's contracting officer and the contracting officer never informed plaintiff that a revised proposal would violate the terms of the solicitation, instructions, or relevant regulations. However, it is a well established principle that the party contracting with the government cannot rely upon apparent authority but instead has the burden of knowing the law and ascertaining whether the one purporting to contract for the government is staying within the bounds of his or her authority. *Heckler v. Community Health Servs.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Thanet Corp. v. United States*, 219 Ct.Cl. 75, 85, 591 F.2d 629, 635 (1979); *Hazeltine Corp. v. United States*, 10 Cl.Ct. 417, 440 (1986), *aff'd*, 820 F.2d 1190 (Fed.Cir.1987). Plaintiff, therefore, had the burden of ascertaining whether defendant's contracting officer was acting within the scope of his authority in awarding the contract to plaintiff. The contracting officer had no authority to accept any offer submitted in violation of the solicitation. In fact, no contracting officer could be authorized to enter into an illegal contract. Plaintiff, therefore, failed in its duty to accurately ascertain whether defendant was acting within the scope of its authority. As a consequence, plaintiff cannot now be permitted to hold defendant liable under the alleged contract.

■ There are situations, however, where equitable relief may be granted to a contractor who has entered into an illegal

contract with the government. The Court of Appeals for the Federal Circuit has held:

> Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a *quantum valebant* or *quantum meruit* basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated *under* the contract, but rather under an implied-in-fact contract.

*Amdahl,* 786 F.2d at 393 (emphasis in original); *see Prestex,* 162 Ct.Cl. at 628–31, 320 F.2d at 373–75. However, because the amount of recovery available to a contractor under this theory is necessarily limited to the value of actual benefit received by the government, it would follow that where the government has not received any benefit as a result of a contractor's performance, that the performing contractor could not receive any compensation. *Amdahl,* 786 F.2d at 393; *Schoenbrod,* 187 Ct.Cl. at 634–35, 410 F.2d at 404; *Prestex* 162 Ct.Cl. at 628–31, 320 F.2d at 373–75. In the present action, the government neither received, accepted, nor was benefited by the space or services for which it had purportedly contracted. Therefore, this court may not allow plaintiff to hold defendant liable for any equitable compensation under an implied-in-fact contract. Although it may be argued that *Schoenbrod* was a contract for goods, and that *Alabama Rural* was a contract for services, and that this case is yet something else, *i.e.,* a contract for the lease of real property, the court concludes that no relevant factors or considerations distinguish goods and services, *e.g., Amdahl,* 786 F.2d at 393, and likewise, no relevant factors or considerations are known to the court that distinguish goods and services from the lease of space. Therefore, the procurement to lease space in the present action may not be distinguished from the doctrine set forth in *Amdahl, Schoenbrod,* and *Alabama Rural.* As a consequence, the parties in the present situation have not incurred any liability to each other as a result of their dealings.

## CONCLUSION

Plaintiff's motion for summary judgment is denied and defendant's cross motion for summary judgment is granted. The court is persuaded that no legally enforceable contract arose between the parties. Accordingly, defendant is under no obligation to plaintiff, and plaintiff has no legally redressable claim. There being no other judicially redressable conflicts between the parties over which this court has jurisdiction, this case is ordered dismissed with prejudice. The Clerk of the court is directed to enter judgment accordingly. Costs to defendant.

IT IS SO ORDERED.