**Fayyad AL–KURDI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–29C.**

United States Claims Court.

March 31, 1992.

**600**

Michael J. Dennis, Washington, D.C., for plaintiff. Dennis Law Corporation, of counsel.

John E. Kosloske, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, of counsel.

## OPINION

FUTEY, Judge.

This government contract case is before the court on defendant's motion for summary judgment. Plaintiff maintains that defendant breached an implied contract.

1. 28 U.S.C. § 2502 (1988) provides:
 Citizens or subjects of any foreign government which accords to citizens of the United States the right to prosecute claims against their government in its courts may sue the United States in the United States Claims Court.
 By sworn affidavit of Jordanian Judge Faiq Halazun this requirement has been satisfied. Defendant's statement ... regarding reciprocity filed on February 26, 1992.

Defendant counters that the alleged contract is unenforceable.

### Factual Background

Plaintiff, Fayyad Al–Kurdi, a Jordanian real estate agent,[1] alleges that in 1984 he entered into an oral agreement with officials from the United States Embassy (Embassy) in Jordan to locate property for a new Embassy Chancery. Plaintiff avers that the United States agreed to compensate plaintiff, indirectly through a fee from the seller, or alternatively, by allowing plaintiff to first purchase the property and then, in turn, to resell it to the United States at a profit. Plaintiff contends that he showed Embassy officials various parcels of land, including a parcel that the United States ultimately purchased for its new Chancery, through a different agent. Accordingly, plaintiff claims $781,588.00 in brokerage fees. Defendant counters that, although plaintiff showed properties to Johnny Young, the Embassy's Administrative Counselor, Mr. Young never signed any documents to purchase the property ultimately acquired for the new Chancery.[2]

In its motion, defendant asserts that this contract, allegedly entered into and performed in Jordan, is subject to Jordanian law. Defendant further maintains that, under the statute of frauds in Jordan, the alleged oral contract is unenforceable.

Plaintiff responds that federal law, not Jordanian law, governs the terms of the alleged agreement, and that under federal law a contract need not be in writing to be valid. Nonetheless, in the event that Jordanian law controls, plaintiff asserts that defendant has waived the defense of statute of frauds by failing to plead it in the answer as an affirmative defense. Moreover, plaintiff contends that the Jordanian

2. The Administrative Counselor, Johnny Young, signed a non-binding document authorizing plaintiff to purchase a building known as the Rama Hotel and surrounding properties. The government, however, ultimately decided not to purchase those properties. Regardless, those properties are not presently at issue. Defendant's motion for summary judgment, Appendix (App.) p. 13.

statute of frauds is inapplicable to this alleged brokerage agreement and also that there is a factual dispute as to the custom of Jordanian brokers. Defendant contends that under Jordanian commercial law, custom is irrelevant to this sort of agreement and, accordingly, defendant is entitled to summary judgment as a matter of law.

Plaintiff filed this complaint pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–13 (1988), on January 9, 1990. On August 6, 1991, defendant moved for summary judgment; further pleadings were filed in accordance with RUSCC 56. *See* RUSCC 12(c).

### Discussion

#### I. *Summary judgment*

Summary judgment is an integral part of the federal rules; it is designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (*quoting* Fed. R.Civ.P. 1). Summary judgment is appropriate when the pleadings raise no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. RUSCC 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the non-movant's case. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *H.F. Allen Orchards v. United States*, 749

F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

#### II. *Choice of law*

Defendant urges that, under accepted principles of conflict of law analysis, the law of Jordan should apply to this alleged contract. Plaintiff maintains that federal law, and not Jordanian law, controls the construction of the alleged contract.

■ Neither the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988), nor the CDA prescribes the law to be applied in suits brought pursuant to these statutes. Defendant notes that where Congress has not decided the appropriate rule, "it is for the federal courts to fashion the governing rule of law according to their own standards." *Clearfield Trust v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *Marine Midland Bank v. United States*, 231 Ct.Cl. 496, 510, 687 F.2d 395, 404 (1982). In *United States v. Kimbell Foods*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979), the Supreme Court stated:

> [W]hether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy "dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law."

*Kimbell Foods* at 728, 99 S.Ct. at 1458 (*quoting United States v. Standard Oil Co.*, 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947)). In the context of contracts between the federal government and its citizens, the courts have opted for a uniform federal common law of contracts as the federal rule of decision, to avoid the uncertainty of conflicting state laws. *Clearfield*, 318 U.S. at 367, 63 S.Ct. at 575. Nonetheless, the present issue concerns a contract with a foreign citizen, allegedly made and performed in a foreign country.[3]

---

**3.** The choice of law principles regarding the selection of federal law over state law are different than the principles controlling the selection of federal law over the law of another nation. Many of the cases cited by plaintiff rest upon

the seminal Supreme Court case, *United States v. Allegheny County*, 322 U.S. 174, 182, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944). *Allegheny* was based on the Supremacy clause of the Constitution:

Defendant contends that the iron application of federal law would lead to forum shopping. When a foreign country law precluded a particular claim, foreign litigants could then opt to sue in the United States Claims Court. Alternatively, if federal law precluded the claim but foreign law was amenable, then plaintiffs could sue the United States in a foreign forum.

Accordingly, defendant argues that the rule chosen should follow the *Restatement (Second) Conflict of Laws* (Restatement) (1969). Defendant notes that federal courts have referred to the Restatement as "a source of general choice-of-law principles and an appropriate starting point for applying federal common law." *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1003 (9th Cir.1987); *accord Commercial Ins. Co. of Newark v. Pacific–Peru Const.*, 558 F.2d 948, 952 (9th Cir.1977). Moreover, the Court of Claims pronounced that courts "should take account of the best in modern decision and discussion." *Keydata Corp. v. United States*, 205 Ct.Cl. 467, 480, 504 F.2d 1115, 1122 (1974) (*quoting Padbloc v. United States*, 161 Ct.Cl. 369, 377 (1963)).

■ Under modern conflicts analysis, initially this court must determine if there is a false conflict of law. Such a conflict occurs when "the potentially applicable laws

[T]he laws of the United States enacted pursuant thereto [are] "the Supreme Law of the Land; and the Judges in every State shall be bound thereby."

*Allegheny*, 322 U.S. at 182, 64 S.Ct. at 913 (*quoting* U.S. Const. Art. VI, Cl. 2). The Supremacy clause applies to states and is inapplicable to considerations of federal law versus foreign law.

4. The language of 31 U.S.C. § 1501(a) (1988) *appears* to preclude an oral contract with the United States:

An amount shall be recorded as an obligation of the United States Government only when supported by documentary evidence of—
(1) a binding agreement between an agency and another person ... that is—
(A) in writing, in a way and form, and for a purpose authorized by law.

Nonetheless, in construing this section the Court of Claims held—

[T]he failure, for whatever reason, of an attempt at an express contract, be it written or oral, is not enough, in itself, to deprive a party of a recovery for breach where sufficient additional facts exist for the court to infer the "meeting of the minds."

do not differ, or ... when, upon examination, one law—by its terms or underlying policies—is not intended to apply to a situation such as the one in issue." *Pearce v. E.F. Hutton Group, Inc.*, 664 F.Supp. 1490, 1496 (D.D.C.1987). In addition, a true conflict exists only when the difference has a significant effect upon the outcome of the case. *International Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). A false conflict obviates the need to apply foreign law, since it would not differ from federal law.

Pursuant to the law of Jordan, commercial, non-commercial and civil contracts over approximately $25.00 must be in writing. Federal law has no corresponding requirement.[4] Therefore, this is a true conflict of law.

■ Under the Restatement the country where the significant contracting contacts occurred is the forum whose law controls. Section 188 of the Restatement states that—

In the absence of an effective choice of law by the parties ... the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:[5]

*Narva Harris Constr. Corp. v. United States*, 216 Ct.Cl. 238, 244, 574 F.2d 508, 511 (1978). Hence, 31 U.S.C. § 1501(a)(1)(A) does not create a false conflict between federal and Jordanian law. *But see United States v. American Renaissance Lines*, 494 F.2d 1059, 1061 (D.C.Cir.1974).

5. Section 6 of the Restatement states:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Plaintiff maintains that he met and came to an understanding with Embassy officials in Jordan. Plaintiff alleges that the understanding was that he would locate property for the new Embassy Chancery in Jordan. Plaintiff contends that defendant ultimately purchased the land that he showed them. Thus, under this analysis, the place of contracting, negotiation, performance, and subject matter is Jordan. Plaintiff, too, is Jordanian. The only contact with the United States lies in that the United States government is the defendant.

Moreover, cases involving government contracts with foreign contractors frequently apply the law of the foreign country either where the contract was performed in a foreign country, or where the contract had significant contacts with the foreign country. *Gesellschaft Fuer Fertigungstechnik u. Maschinenbau AG (GFM)*, ASBCA No. 24816, 81–1 BCA, ¶ 14,924 at 73,847, 1980 WL 2902; *The Master Builders*, ASBCA No. 26129 82–2 BCA, ¶ 15,842 at 78,535, 1982 WL 8908. In *Gesellschaft* the Board of Contract Appeals noted that—

[M]odern decisions adopt the approach of looking for the most *significant connections* of the transaction with a particular legal system or, as it is sometimes expressed a "center of gravity" approach and search for that national law with which the transaction has its closest and most real connection. [Emphasis added.]

*Gesellschaft*, at 73,847 *quoting Gourmet Enterprises, Ltd.*, ASBCA No. 16543 73–2 BCA, ¶ 10,064 at 47,206, 1973 WL 1874 (citations omitted).

Other government contract cases have specifically looked to the place of performance:

[O]ne rule that appears to be quite firmly imbedded in the Federal law at this time is that as to matters of performance with regard to non-government contracts the law of the place of performance governs.... There is no apparent reason why the same rule should not apply to the performance of government contracts outside of the United States.

*Gesellschaft* at 73,846 (*quoting Jac. A. Vonk's Handelmaatschappij N.V.*, ASBCA No. 621) (21 August 1950)).[6] In addition, our predecessor court has applied foreign law in light of the parties' agreement that a foreign law should apply. *Cuban Truck & Equip. Co. v. United States*, 166 Ct.Cl. 381, 395, 333 F.2d 873 (1964). Hence, there is no precedential bar to this court's application of foreign law.[7] In addition, RUSCC 44.1 allows this court to determine foreign law as a matter of law:

A party who intends to raise an issue concerning the law of a foreign country shall give notice in the party's pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony whether or not sub-

---

6. *See also S.p.A. Giolai & C.*, ASBCA No. 22554, 79–1 BCA, ¶ 13,608 at 66,713, 1978 WL 2152 (a contract entered into in Italy is governed by Italian law unless the parties choose otherwise); *J.C. Pratt Industries, Ltd.*, ASBCA No. 15030, 71–2 BCA ¶ 8928 at 41,507, 1971 WL 1293 (applying Canadian law to a contract entered into and performed in Canada); *Juan Gonzalez Villalba*, ASBCA No. 11942 68–1 BCA, ¶ 6885 at 31,807, 1968 WL 570 (applying Spanish law to a contract performed in Spain); *Fuji Motors Corporation*, ASBCA No. 2117, 58–1 BCA ¶ 1817 at 7132, 1958 WL 3655 (applying the law of Japan to a contract executed in Japan).

7. *But see Fincke v. United States*, 230 Ct.Cl. 233, 675 F.2d 289 (1978) (applying Federal common law to the construction of an alleged implied-in-fact brokerage contract to provide insurance to the Greek Embassy.) In contrast to the present case, plaintiff in *Fincke* was an American citizen, soliciting insurance bids from American companies. Moreover, the Embassy never selected any of the proposals that plaintiff offered. *Id.* at 244–45, 675 F.2d 289.

mitted by a party or admissible under the Federal Rules of Evidence. The court's determination *shall be treated as a ruling on a question of law.* [Emphasis added.]

RUSCC 44.1; *Crawford v. United States,* 4 Cl.Ct. 699, 702 (1984). Accordingly, this case is governed by the law of Jordan, the country with the most significant connection to the alleged contract.

### III. *Waiver of an affirmative defense*

 Procedure in the Claims Court is controlled by RUSCC. Thus, while Jordanian law governs the substantive issues in this case,[8] RUSCC "govern[s] all proceedings in actions filed in the United States Claims Court on or after October 1, 1982." RUSCC (1)(a). Accordingly, the issue of waiver is governed by RUSCC.

Plaintiff contends that defendant has waived its right to assert the affirmative defense of statute of frauds by failing to raise the defense in its answer. Plaintiff maintains that defendant did not assert the statute of frauds defense until May 1991. Thus, plaintiff avers that defendant has prejudiced plaintiff's ability to respond to the defense. According to plaintiff, he had no reason to inquire into the relevant real estate customs and practices in Jordan and, therefore, has not had the opportunity to adequately rebut defendant's argument.

The general rule is that affirmative defenses are waived when not pleaded in the answer. *Crocker v. United States,* 130 Ct.Cl. 567, 575, 127 F.Supp. 568, 573 (1955); *Todd v. United States,* 155 Ct.Cl. 87, 94, 292 F.2d 841, 845 (1961); RUSCC 8(c) ("In pleading to a preceding pleading, a party *shall set forth affirmatively* ... statute of frauds...." [Emphasis added.]

Nonetheless, "[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that a party is prepared to properly litigate it." *Hassan v. United States Postal Service,* 842 F.2d 260, 263 (11th Cir.1988) (*citing Blonder–Tongue Laboratories Inc., v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971)). In addition, the waiver rule is not without its exceptions. Failure to plead an affirmative defense does not automatically extinguish the defense. *Cities Service Helex, Inc. v. United States,* 211 Ct.Cl. 222, 234, n. 14, 543 F.2d 1306 (1976); *Erickson v. United States,* 159 Ct.Cl. 202, 210, 309 F.2d 760, 764 (1962). As noted in *Cities Service,* if—

[T]he plaintiffs have ably and thoroughly responded to the Government's arguments, showing no prejudice from the injection of the issue at this stage ... we will consider the defense on the merits.

*Id.* at 234, n. 14, 309 F.2d 760. Moreover, "this court is compelled to 'freely' grant a party leave to amend its pleading 'when justice so requires.'" *Johnson v. United States,* 15 Cl.Ct. 169, 172 (1988) (*quoting* RUSCC 15(a)).

Plaintiff was not prejudiced by defendant's failure to assert the affirmative defense of statute of frauds. Plaintiff has adequately argued against defendant's motion for summary judgment.[9] This court will permit defendant to raise the defense.

### IV. *Jordanian law*

Defendant contends that Article (Art.) 28(1) of Jordan's "Law of Evidence" compels the court to grant defendant summary judgment. Art. 28(1) provides:

In the contractual obligations the possibility of the oral testimony shall be subject to the following provisions:

1. If the contractual obligation in non-commercial matters exceeds ten Jordan dinars or is for an undetermined value, oral testimony may not be resorted to so as to prove the obligation or the release therefrom unless there is an agreement or provision to the contrary. However, in the wholly

---

8. A statute of frauds provision is not a procedural provision and is substantive rather than procedural law. *Condit Chemical & Grain Co. v. Helena Chemical Corp.,* 789 F.2d 1101, 1102 (5th Cir.1986).

9. Plaintiff has raised an issue of fact as to the custom of real estate brokers through the expert affidavit of Mahmoud Salah.

commercial obligations and in the civil obligations the value of which does not exceed ten dinars oral evidence may be resorted to.

Thus for non-commercial, civil or wholly commercial obligations, oral evidence may not be used to prove a transaction that exceeds ten Jordanian dinars. Plaintiff claims $781,588.00; therefore, the matter exceeds ten Jordanian dinars.[10]

The court now turns to the issue of whether this transaction falls within the parameters of Art. 28(1). Facially, Art. 28(1) deals with transactions that are non-commercial, wholly commercial or civil. A contract between a merchant and a non-merchant is called a mixed transaction.[11] In a case such as this, the registered broker is considered a merchant and the Embassy is not.[12] Thus, Art. 28(1) on its face does not apply to a mixed contract.

Notwithstanding this characterization, this transaction can be qualified as commercial, if it consists in the purchase of a commodity with the intention of its resale, even if one of the parties is not a merchant.[13] Nonetheless, the government was not buying the property for resale. Hence, this alleged contract cannot be qualified as wholly commercial and fall under Art. 28(1).

In cases where a statute does not directly address the issue, custom may be referred to by the courts:

[A]ccording to the rules of interpretation of laws and documents adopted by the Jordanian Courts, *in case of ambiguity or deficiency*, [the courts] should attempt to arrive at the true intention of the legislator or the parties to the contract. They can resort to court precedents, *to custom (if there is no law governing the particular event)*, Moslem Sharia (religious) Law, or to the jurisprudence of jurists in Jordan and abroad.[14] [Emphasis added.]

Since Art. 28(1) does not appear to govern mixed contracts, or at the very least is ambiguous as to oral proof of a mixed contract, this court may inquire into Jordanian custom.

■ Defendant avers that a mixed transaction must be in writing, unless there exists a document signed by the non-merchant (defendant) from which an agreement can be inferred.[15] The rationale behind this rule is that a merchant should not be able to prove a contract against a non-merchant by oral evidence.[16] No such document exists in this case.

Defendant's expert admits, however, that—

[I]n the mixed transaction, if there is a factor which imposes a dispensation with the written document in view, for example, of a family relationship ... *then the contract can be verbal and can be proved by oral evidence.* Whether the dispensation with the written agreement is acceptable or not is a question to be decided by the Judge.... One of the judicial non-Jordanian authorities in Arab Jurisprudence has gone to the extent of considering the custom adopted by certain professions in concluding verbal contracts as a moral prevention which brings such contracts within the dispensation from the written document. I do

---

10. In 1984 ten Jordanian dinars was equal to approximately $25.00 United States dollars. Although plaintiff now contends that the agreement was for no money since the fee would come from the seller, the parties, nonetheless, have not briefed the issue of privity under Jordanian law. Privity of contract is a prerequisite to jurisdiction under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–13 (1988). *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984).

11. Affidavit of Sami Habayeb, defendant's expert on Jordanian law; defendant's motion for summary judgment; App. p. 22.

12. *Id.*

13. Jordanian Court of Cassation Appeal No. 350/78—1979 Bar Law Reports p. 391.

14. Defendant's expert, Sami Habayeb; defendant's motion for summary judgment; App. p. 29.

15. Defendant's motion for summary judgment; App. p. 22.

16. *Id.*

not agree with this interpretation and I have not seen other authorities in support thereof.[17]

Thus, defendant's own expert has indicated that there is an issue as to whether brokerage contracts may be proved by oral evidence.

Plaintiff's expert, Mahmoud Salah states:

[C]ustomary practice in the real estate brokerage market in Jordan does not require written contract [sic] for its conclusion. Rules of evidence are flexible enough to comply with norms and customs in a given market or practice as far as such rules, like Article 28(1) of the Jordan Law of Evidence, are not imperative or relating to public order. *Custom is regarded under Jordanian law as a source of law.* As far as custom does not contravene an imperative legal rule or public order. [Emphasis added.]

Therefore, plaintiff's expert contends that custom is applicable to brokerage contracts, and defendant's expert acknowledges that, at the very least, it is an open issue. Accordingly, this case would benefit from further ventilation of fact and law. *See Philadelphia Suburban Corp. v. United States,* 217 Ct.Cl. 705, 707 (1978). Defendant has not carried its burden of proving an absence of material issues of fact; therefore, defendant's motion for summary judgment is hereby denied.

An order scheduling a status conference concerning further proceedings has been issued separately.