Neal T. HAUSCHILD, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 00–731C.

United States Court of Federal Claims.

Aug. 2, 2002.

Neal T. Hauschild, Bexley, OH, plaintiff, pro se.

Heide L. Herrmann, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Major H. Lee Einsel, Jr., Air Force Legal Services Agency, Arlington, VA, of counsel.

## OPINION

MILLER, Judge.

This case is before the court on independent motions for summary judgment on plaintiff's claim under the Equal Pay Act, 29 U.S.C. § 206(d) (2000). Plaintiff claims that he was paid less than an employee of the opposite sex for performing the same or substantially similar work. Defendant takes the position that, as a matter of law, any disparity is attributable to a seniority or merit system, that would defeat plaintiff's claim. Additional summary judgment issues are whether plaintiff can prove entitlement to a retroactive pay increase through a claim for breach of contract or for an alleged violation of the merit system principles found in 5 U.S.C. § 2301 (2000), and whether defendant waived its right to raising its affirmative defenses. Argument is deemed unnecessary.

## FACTS

Neal T. Hauschild ("plaintiff") was employed by the United States Air Force, Air Force Institute of Technology, Civil Engineer Services School (the "Air Force"), at Wright–Patterson Air Force Base in Ohio from December 9, 1996, to August 16, 2000. A civilian employee, plaintiff was hired to teach courses in environmental management at the GS–12 level.[1] According to plaintiff, the Air Force had advertised the position as one that was paid at the GS–12 level, but had promised him a promotion to GS–13 if he performed successfully for one year and assumed additional course director duties. By declaration plaintiff asserts that, during a telephone interview, Lt. Col. George Kehias told plaintiff that the position was a GS–12 "with the possibility of becoming a GS–13. He said it was not a guarantee that the position would become a GS–13, but that they were working on it." Declaration of Neal T. Hauschild, Feb. 6, 2001, at 1.

Plaintiff alleges that, although he met the stated promotion requirements, he was not promoted. Nevertheless, on August 3, 1997, the Air Force did promote April Lewis, a female employee. Shortly thereafter, plaintiff was offered a position with a private company. Plaintiff asserts that Lt. Col. Kehias told him at that time:

[T]he package that was submitted for Ms Lewis had been approved and she was promoted and that I was going to be submitted for promotion in October 1997 since I had met the same requirements that Ms Lewis met for her promotion to become effective. Because Ms Lewis and I were doing the exact same duties, I was told that my promotion to a GS–13 was "just a paperwork exercise at this point."

Hauschild Decl. at 2.

Plaintiff turned down the private position, but a promotion was not forthcoming. Although Lt. Col. Kehias had submitted plaintiff for promotion, Lovell Davenport, Employee Relations Specialist for the Air Force's Civilian Personnel Division, had rejected it on the ground that plaintiff was not

---

1. The parties dispute plaintiff's exact title. Plaintiff claims that he was hired as an "Environmental Engineer" and that his job included environmental instruction duties. Statement of Genuine Issues filed Apr. 5, 2002, ¶ 2. Defendant asserts that plaintiff's job title was "Instructor." *Id.*

performing the requisite duties for promotion. Ms. Davenport reiterated this conclusion after a desk audit of plaintiff performed in December 1997. According to plaintiff, Lt. Col. Kehias re-submitted plaintiff for promotion in February 1998, and Ms. Davenport conducted another desk audit in February and March 1998, and no action on his request for promotion was taken.[2]

Plaintiff was submitted for promotion again in January 2000. A desk audit was performed in May 2000. On June 18, 2000, plaintiff achieved promotion to GS–13 pay. He requested that his promotion be made retroactive to December 10, 1997, a request that was denied on that ground that Air Force employees are not entitled to increased compensation until promotions actually are effected. Plaintiff thereafter filed a formal complaint with the Air Force, seeking back pay on the basis that from December 1997 until June 2000 he was required to perform the same duties as Ms. Lewis for less pay. The Air Force denied the claim. Plaintiff voluntarily resigned his position in August 2000.

Plaintiff now sues in the Court of Federal Claims, pursuant to the Equal Pay Act of 1963, codified at 29 U.S.C. § 206(d) (2000), seeking back pay and related benefits for the period of December 10, 1997, to June 18, 2000, plus prejudgment interest, a declaratory judgment, costs, and attorneys' fees.[3] Plaintiff also grounds recovery on breach of contract and breach of the governing merit systems statute. Defendant moves for summary judgment, arguing that, even assuming that plaintiff had been performing the same or substantially similar work as Ms. Lewis, the difference in pay was attributable to factors other than sex. Plaintiff counters with a motion for partial summary judgment on the issue of whether plaintiff was performing the same or substantially similar work as Ms. Lewis.

## DISCUSSION

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (finding dispute to be genuine if jury could find in favor of non-moving party). When resolving a motion for summary judgment, the court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Jay v. Secretary of DHHS,* 998 F.2d 979, 982 (Fed.Cir.1993). Although entitled to "all applicable presumptions, inferences, and intendments," *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), the non-movant bears the burden of presenting sufficient evidence upon which the trier of fact reasonably could find in its favor, *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. Should the non-movant fail to present such evidence, summary judgment may be granted in favor of the moving party. *Id.* (stating summary judgment may be granted if evidence not "significantly probative"). Moreover, the summary judgment "standard mirrors the standard for a directed verdict ..., which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250, 106 S.Ct. 2505, *see id.* at 251–52, 106 S.Ct. 2505 ("In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").[4]

---

**2.** Ms. Davenport attests that, to the contrary, at this time only one application had been submitted for plaintiff, consisting of an October 21, 1997 Supervisor's Rationale for Position Upgrade and a February 3, 1998 Form SF–52. Declaration of Lovell Davenport, Feb. 22, 2001, ¶ 3.

**3.** The parties dispute whether, under the circumstances of this case, the court's jurisdiction extends to the issuance of injunctive or declaratory relief. This court lacks general equitable authority, and thus declaratory judgments are appropri-

ate only as related to a claim for monetary relief. *Nat'l Air Traffic Controllers Ass'n v. United States,* 160 F.3d 714, 716 (Fed.Cir.1998). Although plaintiff has lodged a claim for monetary relief, he does not explain why a declaratory judgment is necessary for the resolution of his claim, particularly as he does not seek reinstatement.

**4.** Although both parties move for summary judgment, they do so on different aspects of plaintiff's claim and do not implicate the application of

### 1. *Equal Pay Act*

The Equal Pay Act, 29 U.S.C. § 206(d)(1), prohibits the consideration of an individual's gender as the basis for that individual's pay:

> No employer having employees subject to any provision of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

This provision applies to employees of federal, state, and local governments. 29 U.S.C. § 203(e)(2) (2000).

■ To establish a *prima facie* case under this provision, a plaintiff must show that the employer pays different wages to employees of the opposite sex even though the employees perform equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Once a *prima facie* case is made, the burden shifts to the defendant to show that the pay differential is justified by one of the statute's enumerated defenses. *Id.* at 196, 94 S.Ct. 2223; *County of Wash. v. Gunther,* 452 U.S. 161, 169, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) (Equal Pay Act consists of two parts—a definition of the violation and four affirmative defenses).

standards pertinent to cross-motions for summary judgment.

**5.** Plaintiff's job title is not determinative of whether plaintiff can prevail on his claim. *See Gunther v. County of Wash.,* 623 F.2d 1303, 1309

### 2. *Plaintiff's motion for summary judgment on his prima facie case*

■ There is no dispute that plaintiff, paid at the GS–12 level, received less pay than Ms. Lewis, paid at the GS–13 level. The only legal issue for purposes of plaintiff's motion, therefore, is whether plaintiff and Ms. Lewis performed equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions. The focus of this inquiry is on the primary duties of each job. 29 C.F.R. § 1620.15(a) (2001); *Goodrich v. Int'l Bhd. of Elec. Workers,* 815 F.2d 1519, 1524 (D.C.Cir.1987); *Pearce v. Wichita County, etc., Hosp. Bd.,* 590 F.2d 128, 133 (5th Cir.1979) ("[T]he controlling factor under the Equal Pay Act is job content—the actual duties that the respective employees are called upon to perform."). In the context of the Equal Pay Act, "equal" work does not mean "identical" work. 29 C.F.R. § 1620.14(a). "Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." *Ellison v. United States,* 25 Cl.Ct. 481, 487 (1992).

Plaintiff submits affidavits from the Dean of the Civil Engineer Services School, Joseph H. Amend, III, and from the Associate Dean, Charles R. Fenno. Both attest that in December 1997, plaintiff, and four others identified as William Reed, Randy Schober, Cherry Wilcoxon–Hurt, and Paul Keenan, all paid at the GS–12 level, performed the same duties as Ms. Lewis, paid at the GS–13 level. These opinions are contested by the opinion of Ms. Davenport, who relied on desk audits of plaintiff in December of 1997 and February and March 1998 that concluded that plaintiff was not performing work at the GS–13 level. Moreover, the parties dispute the primary duties of Ms. Lewis's position and whether she herself was performing work at the GS–13 level. They also do not agree on the primary duties of plaintiff's position and even plaintiff's job title as it relates to this analysis.[5] Because numerous genuine issues

(9th Cir.1979) (job classifications or titles not determinative of substance of plaintiff's work), *aff'd on other grounds,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

of material fact are present as to whether plaintiff and Ms. Lewis performed the same or substantially the same work on jobs requiring equal skill, effort, and responsibility, and under similar working conditions, summary judgment on plaintiff's *prima facie* case under the Equal Pay Act is not appropriate.

### 3. *Defendant's motion for summary judgment on its affirmative defenses*

Defendant argues that, even if plaintiff and Ms. Lewis received different pay, summary judgment in its favor is proper because that pay differential is attributable to factors other than sex. The burden of proving that a factor other than sex underlies the wage differential is a heavy one. *Ellison*, 25 Cl.Ct. at 487 (citing *Brennan v. Owensboro–Daviess Co. Hosp.*, 523 F.2d 1013, 1031 (6th Cir. 1975)). "Merely asserting a plausible, non-gender based explanation is not sufficient." *Id.* An employer's liability under the Equal Pay Act is exempted only if it can show that the differential is attributable to one of the four presumptively sex-neutral reasons enumerated in the statute. *Corning*, 417 U.S. at 196, 94 S.Ct. 2223. These exemptions are to be narrowly construed. *Grumbine v. United States*, 586 F.Supp. 1144, 1150 & n. 27 (D.D.C.1984).

### 1) *Waiver of affirmative defenses*

With his opposition brief, plaintiff filed Plaintiff's Motion in *Limine* and Motion To Estop the Untimely Raising of Affirmative Defenses. Plaintiff seeks to bar defendant from raising the affirmative defenses enu-

merated in the Equal Pay Act because defendant failed to raise them in its answer as required by RCFC 8(c). Plaintiff also seeks to exclude certain documents and affidavits going to defendant's affirmative defenses on the ground that they previously were not disclosed in discovery and as such are barred by operation of RCFC 37(c).

#### i) *RCFC 8(c)*

 In its answer, under the heading "Affirmative Defense," defendant stated only that plaintiff's claim is barred by the applicable statute of limitations. "The general rule is that affirmative defenses are waived when not pleaded in the answer." *Al–Kurdi v. United States*, 25 Cl.Ct. 599, 604 (1992); *aff'd*, 48 F.3d 1237 (Fed.Cir.1995) (unpublished table decision); *see Crocker v. United States*, 130 Ct.Cl. 567, 575, 127 F.Supp. 568, 573 (1955).[6] The purpose of RCFC 8(c) is to put the opposing party on notice of the possibility of a defense. *Int'l Fidelity Ins. Co. v. United States*, 27 Fed.Cl. 107, 110 (1992); *Kurdi*, 25 Cl.Ct. at 604. The federal courts maintain that liberal pleading rules do not require waiver of an affirmative defense under FED. R. CIV. P. 8(c) if the party's failure to raise the defense did not cause unfair surprise or prejudice to the plaintiff. *See Brinkley*, 180 F.3d at 612 (surveying circuits). The same is true in the Court of Federal Claims. *See Cities Serv. Helex, Inc. v. United States*, 211 Ct.Cl. 222, 234 n. 14, 543 F.2d 1306, 1313 n. 14 (1976) (considering affirmative defense on merits on ground that, although not plead, parties exhaustively treated defense in briefs without evidence that plaintiffs were prejudiced by introduc-

---

6. Defendant maintains that the Equal Pay Act's enumerated exceptions are not affirmative defenses that must be raised in an answer. An affirmative defense is "[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by the applicable substantive law." *Hassan v. USPS*, 842 F.2d 260, 263 (11th Cir.1988) (quoting 2A JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 8.27 (2d ed.1985)). It is well established that the four exemptions to liability under the Equal Pay Act are affirmative defenses. *See, e.g., Corning*, 417 U.S. at 196–97, 94 S.Ct. 2223 (that Equal Pay Act places burden of proof as to exemptions on employer "is consistent with the general rule that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative

defense"); *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 612 (4th Cir.1999) (employer's intention to rely on "factor other than sex" defense is affirmative defense to be plead in answer); *see also Gunther*, 452 U.S. at 168, 101 S.Ct. 2242 ("[T]he [Equal Pay] Act's four affirmative defenses exempt any wage differentials attributable to seniority, merit, quantity or quality of production, or 'any other factor other than sex.' "); *City of Los Angeles Dep't. of Water & Power v. Manhart*, 435 U.S. 702, 717 n. 31, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (under the Equal Pay Act, "even if the [pay] differential were based on a sound and well-recognized business practice, it would nevertheless be discriminatory, and the defendant would be forced to assert an affirmative defense to escape liability").

tion in briefs rather than in answer); *Int'l Fidelity*, 27 Fed.Cl. at 110 (defendant's pleading requirement met if defendant sufficiently articulates defense so that plaintiff is not victim of unfair surprise).

Although defendant failed to raise the existence of either a seniority or merit system under the heading of "affirmative defense" in its answer, the answer nonetheless provided plaintiff with notice that the defenses would be raised. Plaintiff's complaint alleged that "[t]he differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on quantity or quality of production, or upon a factor other than sex." Compl. filed Dec. 5, 2000, ¶ 2. Defendant's answer denied this allegation. Ans. filed Mar. 20, 2001, ¶ 2. The answer thus fairly can be read as raising the defense, even though it was not included with the statute of limitations as an "affirmative defense." Indeed, in the parties' Joint Preliminary Status Report ("JPSR"), plaintiff agreed that one of the relevant issues presented in this case was "[w]hether the alleged differential rate of pay between plaintiff and one particular employee was based upon a seniority or merit system, or any factor other than the employee's gender." JPSR filed May 4, 2001, at 3. Plaintiff asserts that because nothing was disclosed in discovery on this issue, plaintiff was of the "honest belief that the potential issue raised in the JSPR [sic] was moot." Pl.'s Motion in *Limine* filed July 8, 2002, at 4. The fact that plaintiff was unaware as to whether the Government meritoriously could rely on an affirmative defense does not vitiate the conclusion that plaintiff was on notice of the possibility of a defense. *See Brinkley*, 180 F.3d at 612.

Moreover, it does not appear that plaintiff has been unfairly prejudiced by defendant's failure previously to identify the basis of any affirmative defense. Plaintiff's deposition reveals that plaintiff previously has been questioned at length about the existence of and operation of the Air Force's seniority and merit systems and that plaintiff previously has acknowledged that he knows that such systems are affirmative defenses under the Equal Pay Act. *See* Deposition of Neal T. Hauschild, Oct. 22, 2001, at 91–92. Plaintiff

elsewhere acknowledges that during discovery, he "in good faith, attempted to obtain the deposition and any other evidence pertaining to the affirmative defenses from Defendant." Pl.'s Motion in *Limine* filed July 8, 2002, at 9. Plaintiff's exclamation of surprise is not germane to the issue of the raising of the defenses, but to plaintiff's subjective assessment of whether the defenses have merit. Furthermore, prior to the filing of his motion in *limine*, plaintiff thoroughly and aptly responded to defendant's motion for summary judgment on its affirmative defenses with both counter-facts and legal arguments. In these circumstances plaintiff cannot marshal a showing of unfair prejudice based on defendant's failure to label its defenses as affirmative defenses in its answer rather than to have presented them as a general denial of plaintiff's allegation that no such defenses exist. *Cf. Al–Kurdi*, 25 Cl.Ct. at 604 (no prejudice shown when plaintiff adequately argued against affirmative defense raised for first time in defendant's motion for summary judgment).

### ii) *RCFC 37(c)*

RCFC 37(c) mandates that "[a] party that without substantial justification fails to disclose information required by RCFC 26(a) or 26(e)(1), or to amend a prior response to discovery as required by RCFC 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Plaintiff's interrogatories asked defendant to "[d]escribe in detail the standardized civilian personnel procedures for position upgrades and promotions. Furnish applicable Operating Instructions in use by civilian personnel for this purpose from May 1997 through June 2000." Def.'s Responses to Pl.'s First Set of Interrogatories and Request for Production of Documents, Oct. 15, 2001, at 3. He also requested any and all documents upon which defendant would rely to establish and prove any defense. According to plaintiff, defendant to date has produced no documents pertaining to a seniority, merit system, or other defense. He thus moves under RCFC 37(c), because defendant's dispositive motion is predicated on the declarations of Kurt G. Masser, Air

Force Position Classification Specialist, and David E. Crawford, Air Force Human Resources Specialist, individuals not disclosed to plaintiff in accordance with RCFC 26(a)(1)(A). He charges that defendant also relies on undisclosed copies of policies, procedures, operating instructions, affidavits, reports, and the like, pertaining to affirmative defenses in violation of RCFC 26(a)(1)(B). Finally, plaintiff charges that defendant violated RCFC 26(e)(2) because it did not seek to amend its interrogatory responses to reflect this evidence.

The court is somewhat at a loss. Plaintiff fails to identify those particular documents upon which defendant relies, but to which he was not afforded copies. Moreover, defendant's motion is predicated principally on the seniority and merit system codified at 5 C.F.R. § 300.604(a) (2002), which states that Air Force employees are eligible for promotion after working 52 weeks and assuming additional duties. Although plaintiff did not cite to the regulation, this policy was advanced in plaintiff's complaint. Defendant provided a lengthy answer to plaintiff's interrogatory calling for a detailed description of the standardized civilian personnel procedures for position upgrades and promotions. Although that interrogatory also asked for "Operating Instructions" that plaintiff asserts never were provided, defendant does not rely on a document entitled "Operating Instructions" in its motion. Regarding the other documents attached to defendant's motion, it is apparent that the contents of some of these documents were made available and/or published during plaintiff's earlier administrative proceeding. Plaintiff offers the court no basis to ascertain which documents defendant allegedly was not substantially justified in failing to produce at an earlier date.

Regarding the affidavits of Messrs. Masser and Crawford, plaintiff again assumes that he can foreclose defendant from presenting these affidavits because they were first disclosed with defendant's motion for summary judgment. Mr. Masser testifies succinctly to the fact that a desk audit was performed on plaintiff and that the audit revealed that plaintiff was not working at the GS–13 level. Mr. Crawford, with even less exposition, asserts that Ms. Lewis was promoted under an automated merit system and that under that system plaintiff was not eligible for promotion on August 3, 1997, the date of Ms. Lewis's promotion. These affidavits actually support allegations made by plaintiff in the complaint. Failure previously to disclose them is therefore harmless, and plaintiff's procedural motion is denied. Plaintiff should observe that RCFC 56(f) is the appropriate rule by which to open discovery on the contents of those affidavits.[7]

### 2) *Defendant's affirmative defenses*

 Defendant offers that Ms. Lewis was promoted consistent with an automatic merit system and in accordance with the Air Force's organizational structure. Furthermore, it contends that, as Ms. Wilcoxon–Hurt, a female, also did not achieve promotion, plaintiff cannot argue seriously that the decision to withhold plaintiff's promotion was due to sex, as a male and female had both been treated the same way, *i.e.*, had not been promoted. This latter contention lacks merit. The Equal Pay statute prohibits individual pay decisions based on sex—it does not require proof of discriminatory policy. *Ellison*, 25 Cl.Ct. at 487. Furthermore, it is well-established that the fact that others of different gender are similarly treated cannot defeat a plaintiff's *prima facie* showing that he was paid differently than a similarly situated employee of the opposite sex. *Id.* (citing cases for proposition that "plaintiff need not compare herself to all similarly classified male employees"); *Molden v. United States,*

---

7. Plaintiff also objects to the affidavits under FED. R. EVID. 702 to the extent that defendant offers them as expert testimony. Mr. Masser offers percipient testimony regarding the Air Force's performance of desk audits on plaintiff and others and concludes that, based on these desk audits, he sees no evidence that plaintiff performed at the GS–13 level until May 2000. Mr. Crawford attests that "[a]fter reviewing Mr. Neal Hauschild's personnel records, I have determined that he would not have been eligible for the merit promotion action which resulted in the promotion of Ms. April Lewis to Environmental Engineer, GS–0819–13, in AFIT/CEV in August 1997." Declaration of David E. Crawford, Feb. 27, 2002, ¶ 3. Upon a proper showing, Mr. Crawford can offer this opinion as a lay witness. FED. R. EVID. 701.

11 Cl.Ct. 604, 610–11 (1987); *see also Corning Glass,* 417 U.S. at 207–08, 94 S.Ct. 2223 (to permit employer to escape equal pay obligations by allowing some members of the opposite sex higher pay would frustrate Congress's objectives).

■ Because personnel decisions based in accordance with seniority or merit systems are presumptively sex neutral, they are defenses to a claim under the Equal Pay Act. 29 U.S.C. § 206(d)(1); *see Corning Glass,* 417 U.S. at 196–202, 94 S.Ct. 2223 (discussing legislative history of Act's affirmative defenses). The parties agree that, by regulation, Air Force promotions are contingent upon the candidate having "completed a minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the position to be filled." 5 C.F.R. § 300.604(a). The Air Force also requires that the employee assume additional course director duties.

The C.F.R.'s time-in-grade provision is not based on gender, and pay differentials based upon its provisions are permissible exceptions to the Equal Pay Act. *Ibrahim v. United States,* 26 Cl.Ct. 359, 363 (1992) (rejecting argument that Equal Pay Act overrides time-in-grade restrictions on promotion placed by C.F.R.); *accord Girdis v. EEOC,* 688 F.Supp. 40, 42–43 (D.Mass.1987); *see also* 5 C.F.R. § 300.601 (time-in-grade restriction implemented to provide budgetary control on promotion rates and assures appropriate appointments). This conclusion, however, is of limited benefit to defendant. The Government's time-in-grade requirement can only defeat plaintiff's claim for the time for which he did not meet its requirements. *See Ibrahim,* 26 Cl.Ct. at 363; *see also EEOC v. Del. Dep't of Health & Social Serv.,* 865 F.2d 1408, 1415 (3d Cir.1989). In other words, the regulatory seniority system only can be raised against a claim for compensation predicated on time before a plaintiff became eligible for promotion. Plaintiff assumed his position on December 9, 1996, and defendant does not dispute that plaintiff met the time-in-grade requirement 52 weeks later, on December 9, 1997. Plaintiff's complaint thus alleges a pay inequity occurring from December 10, 1997, the date of his eligibility, to June 18, 2000, the date on which he received a grade increase. The issue of whether plaintiff had assumed additional course director duties by this date remains a genuine issue of material fact.

Rather than putting the seniority system forward as an affirmative defense, defendant seems to offer it as evidence that plaintiff cannot make a *prima facie* case. Indeed, it argues that because Ms. Lewis was the senior employee, "[a]ny assertion that the promotion of Ms. Lewis instead of Mr. Hauschild was based upon gender is unsupported." Def.'s Br. filed Mar. 1, 2002, at 8. This argument misses the point. Plaintiff's claim is not that the Air Force erred in promoting Ms. Lewis instead of plaintiff. Nor does plaintiff allege that he was eligible for promotion on August 3, 1997, when Ms. Lewis was promoted. His claim for equal pay actually is predicated on the allegation that, after he became eligible for promotion, he and Ms. Lewis were performing the same or substantially similar work for which Ms. Lewis was paid more than plaintiff. While Ms. Lewis's status as the only employee eligible for promotion in August 1997 may be relevant to defendant's representation that she was promoted under a merit system, the mere fact that she was the senior employee does not alone defeat plaintiff's allegation that he wrongfully was not promoted. To defeat plaintiff's *prima facie* case, defendant must show how the operation of the Air Force's seniority and/or merit systems justifies the fact that after December 10, 1997, plaintiff was paid less than Ms. Lewis for equal work. *See Del. Dep't. of Health & Social Servs.,* 865 F.2d at 1415 (under Equal Pay Act, defendant carries burden of persuasion, not just burden of production).[8]

---

8. The parties vigorously dispute whether Ms. Lewis's promotion, effected on August 3, 1997, complied with regulatory time-in-grade requirements and whether she possessed previous experience that properly could have been added to the determination of whether she had worked a "minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the position to be filled" at the time of her promotion. According to plaintiff, Ms. Lewis did not meet the time-in-grade requirements until October 1997. Defendant responds that Ms.

Defendant next argues that the decision not to promote plaintiff was based partially upon the Air Force's organizational structure. It submits a June 22, 1998 memorandum written by Michael B. O'Hara, Chief, Civilian Personnel Division, in which Mr. O'Hara states: "As a result of our 27 May 1998 meeting, we agreed to review the structure and positions in [plaintiff's division] in light of determinations previously made at [another division]." Mr. O'Hara also noted that plaintiff's division had only one GS–13, Ms. Lewis, as compared to three at the other division. Thus, plaintiff's division carried a supervisor to subordinate ratio of 1:51, while the other division carried a ratio of 1:37. Mr. O'Hara indicates that the latest recommended supervisory ratio for these divisions was 1:14. Defendant proffers this memo as proof that the decision not to promote plaintiff was necessary to keep with the goal of consolidating higher graded duties into as few positions as possible and in keeping with the effort to achieve a 1:14 supervisor-to-subordinate ratio.

Several problems inhere in defendant's arguments. First, Mr. O'Hara's memo was distributed on June 22, 1998, as the result of a meeting on May 27, 1998. Plaintiff, however, was eligible for promotion on December 10, 1997, and was denied promotion at approximately that same time by Ms. Davenport, who did not reference any organizational structure or supervisor-to-subordinate ratio as the basis for denying the promotion.

Rather, Ms. Davenport stated only that plaintiff was not performing additional duties required to justify promotion. Mr. O'Hara reiterated Ms. Davenport's conclusion in his memorandum, explaining that, because the desk audit of plaintiff and others "did not demonstrate they were independently developing course curriculum," "these positions did not meet the criteria for classification at the GS–13 level." [9]

Finally, even assuming that the reason plaintiff was not promoted was due to a desire to maintain a supervisory ratio of 1:14, such a reason would not be a defense to plaintiff's *prima facie* case. If plaintiff was allowed to perform work beyond his job classification and/or description with his supervisors' knowledge and consent, for an unreasonable amount of time, plaintiff is entitled to pay equal for that work. *EEOC v. Maricopa Co. Cmty. College Dist.*, 736 F.2d 510, 515 (9th Cir.1984); *Grumbine*, 586 F.Supp. at 1153 (even if promotion would run afoul of government organizational regulation, regulation not defense if regulation enforced selectively or discriminatorily). In such a case, if the Government desired to maintain a certain supervisory ratio, the cure would be to stop plaintiff from performing those additional duties: "[T]he employer should be allowed to determine whether its organizational needs are such that an employee filling the higher position is necessary. If not, it may require the employee to stop working beyond his or her present job classification, as long

Lewis had equivalent previous experience sufficient to make her eligible for promotion in August 1997.

Despite this dispute, it does not appear to be plaintiff's contention that the Air Force selectively or discriminatorily enforced the time-in-grade requirements such that defendant cannot rely on the existence of a *bona fide* seniority system in defense of its actions. *Grumbine*, 586 F.Supp. at 1153. To the contrary, plaintiff makes no claim that the time-in-grade regulations are not applicable to him. As discussed above, to the extent that defendant intends to offer Ms. Lewis's previous experience merely as proof that she was the senior employee, that argument must be rejected as irrelevant. The parties' dispute on this issue is a continuation of a dispute that arose during plaintiff's deposition, during which plaintiff maintained that, just like Ms. Lewis, plaintiff had previous experience sufficient to make him eligible for promotion in October 1997. However, neither plaintiff's prior complaint nor subsequent

briefs lay a claim for back pay beginning before December 10, 1997, and the court therefore has no basis to address the merits of any dispute about the relevance of either Ms. Lewis's or plaintiff's prior experience and the effect of such experience on eligibility for promotion prior to December 1997.

9. Defendant does not elaborate on the nature of the supervisor-to-subordinate ratio as employed by the Air Force. If a division carried a ratio of one supervisor to 51 subordinates and the Air Force's organizational structure sought to achieve a ratio of one supervisor to 14 subordinates, it would appear that, consistent with that goal, the Air Force would seek either to promote more subordinates to supervisory positions or to reduce the total number of subordinate employees, rather than to deny eligible employees promotion opportunities.

as the decision to take that course is not made on account of the employee's sex." *Maricopa,* 736 F.2d at 515 (citing *Cayce v. Adams,* 439 F.Supp. 606, 608 (D.D.C.1977)).

Defendant has not established as a matter of either fact or law that, assuming plaintiff's *prima facie* case, any discrepancy in pay between plaintiff and Ms. Lewis between December 10, 1997, and June 18, 2000, nevertheless is attributable to operation of the Air Force's seniority and/or merit promotion system. The decision not to promote plaintiff has not been shown to be attributable to any factor other than the Air Force's determination that plaintiff had not assumed additional course director duties required to justify promotion. Whether the Air Force was correct in this determination remains a genuine issue of material fact. For these reasons, defendant's motion for summary judgment on its affirmative defenses is denied.

### 4. *Breach of contract*

Plaintiff alleges that the Air Force breached an implied contract to promote plaintiff to the GS–13 level after he worked one year and assumed course director duties. The existence of a contract, whether express or implied, is proved by facts showing a mutual intent to contract, including an offer, an acceptance, and consideration. *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997); *Lewis v. United States,* 70 F.3d 597, 600 (Fed.Cir.1995). The facts must support the conclusion that the government representative who entered or ratified the agreement had actual authority to bind the United States. *P.R. Burke Corp. v. United States,* 277 F.3d 1346, 1355 (Fed.Cir.2002); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). In the absence of an express contract, the court's jurisdiction is predicated upon those facts supporting an implied-in-fact, as opposed to an implied-in-law, contract. *Hercules, Inc. v. United States,* 516 U.S. 417, 424, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). An implied-in-fact agreement is one "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit

understanding." *Trauma Serv.,* 104 F.3d at 1326 (quoting *Baltimore & Ohio R.R. Co. v. United States,* 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)).

Defendant argues that, as a matter of law, no contract could have existed between plaintiff and the Air Force because plaintiff derived the benefit of his position from appointment, rather than contract. The parties do not dispute that plaintiff was a member of the Civil Service, paid pursuant to the GS pay scale, and did not enter an express contract for employment. *See* 5 U.S.C. § 2105 (2000) (defining employee of the Civil Service as officer or individual who is appointed). Absent specific legislation, it is well-established that federal employees do not have contract or quasi-contractual relationships with the Government. *Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir. 1985). Furthermore, any regulatory or statutory obligation that the Government may have had to promote plaintiff did not create an implied contract with plaintiff. *See Hamlet v. United States,* 63 F.3d 1097, 1101 (Fed. Cir.1995) (because civil service employees serve by appointment, agency employment manuals not contracts).

Plaintiff contends that a contract nevertheless can be formed by a government representative's promise to pay for additional duties and responsibilities assumed by the employee. According to plaintiff, he derived only his "position," as defined in 5 C.F.R. § 511.101, by virtue of appointment. Because he actually was working a different position than that to which he was appointed, he did not derive the "benefit" of his position by virtue of his appointment, and thus a contractual relationship could exist. Pl.'s Br. filed Apr. 5, 2002, at 16. This argument attributes unsupported and undue legal significance to the use of the term "benefit" in the case law. It is true that the Federal Circuit has stated that members of the Civil Service do not enter contracts with the Government for employment because "federal employees derive the benefits and emoluments of their positions from appointment." *Chu,* 773 F.2d at 1229. It does not follow, however, that, by implication, a contract arises simply because an employee is found

not to be enjoying the benefits and emoluments entitled to him. *See Hamlet,* 63 F.3d at 1101.

■ Moreover, even assuming that a contract could have been created, no facts support the conclusion that a contract was created in this case. According to plaintiff's own representations, Lt. Col. Kehias told him there was no "guarantee that the position would become a GS–13, but that they were working on it." Hauschild Decl. at 1. Although Lt. Col. Kehias later did inform plaintiff that his promotion was "just a paperwork exercise at this point," *id.* at 2, "[f]ederal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee." *Shaw v. United States,* 226 Ct.Cl. 240, 251, 640 F.2d 1254, 1260 (1981); *see also, Estate of Bogley v. United States,* 206 Ct.Cl. 695, 705, 514 F.2d 1027, 1032–33 (1975) (citing cases to effect that expressions of intent not offers to contract). Plaintiff makes no specific argument that Lt. Col. Kehias had authority to promote plaintiff, an argument that in any case would be contradicted by the facts as alleged, which show that promotions had to be requested from and approved by the Air Force's Civilian Personnel Division.

Plaintiff's claim is redolent of *Boston v. United States,* 43 Fed.Cl. 220, 221–22 (1999), in which a civilian employee of the Army sought relief for breach of implied contract when he accepted transfer to the United Kingdom, but was not afforded expected cost-of-living allowances. Although plaintiff's supervisor had informed plaintiff that he would be paid at the "Greater London Area rate," individuals in higher command disputed whether plaintiff's transfer site qualified as "Greater London." *Id.* The court held that, because plaintiff had been appointed to

his position, the Army's cost-of-living allowance regulations could not create a contract for employment. *Id.* at 225–26. The statements of plaintiff's supervisor, which merely created expectations in plaintiff that he would be paid at a certain rate, could not rebut the fact that no contractual obligation existed, even though plaintiff accepted the assignment based on those expectations. *Id.* at 226 (noting that such statements nevertheless might be sufficient to bind a private party). Defendant's motion for summary judgment as to plaintiff's claim for breach of contract is granted.[10]

### 5. *Violation of merit systems principles*

■ Plaintiff alleges a breach of the merit systems principles found in 5 U.S.C. §§ 2301(b)(2), (3), (9) (2000). However, it is not apparent whether plaintiff intends to bring an independent claim for breach of these principles or merely to identify the breach in support of his claim under the Equal Pay Act. Defendant properly seeks to dismiss any claim that plaintiff lodges for breach of the merit systems principles on the ground that they are merely interpretive principles a breach of which cannot constitute a cause of action. *See Phillips v. GSA,* 917 F.2d 1297, 1298 (Fed.Cir.1990) (merit systems principles do not provide independent cause of action nor basis for jurisdiction). Plaintiff rejoins that a breach of merit systems principles can support a claim for procedural due process, equal protection, and uncompensated taking—claims that plaintiff did not put forward in his complaint, but raises for the first time in his brief.

■ The Court of Federal Claims lacks jurisdiction over claims brought under the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment because these clauses do not mandate the

---

10. Should the court determine that he is an appointed employee, plaintiff maintains that he is entitled to a remedy under the Back Pay Act, 5 U.S.C. § 5596 (2000). Plaintiff did not seek relief under the Back Pay Act in his complaint, raising it for the first time in his opposition brief. Unlike a claim under the Equal Pay Act, which requires evidence that plaintiff was not compensated with equal pay for equal work, a claim

under the Back Pay Act requires evidence that the plaintiff suffered an "unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee." *Id.* Plaintiff's brief identifies no facts supporting such a claim—a claim that is not before the court.

payment of money. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995); *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988). Although the court does have jurisdiction over an allegation of a taking in contravention of the Fifth Amendment, plaintiff's bald assertion that he enjoys a compensable property interest in his "freedom and talents," Pl.'s Br. filed Apr. 5, 2002, at 22, is unsupported.[11] Even assuming such a compensable property interest, plaintiff does not allege that the Government deprived him of his "freedom and talents." To the extent plaintiff may have held a protected property interest in compensation for the additional freedom and talents he contributed to his position, such an interest could not form the basis of a claim for a taking. Plaintiff's only interest would be in money, and the Government's obligation to pay money cannot support a takings claim. *See Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338–39 (Fed.Cir.2001) (discussing *United States v. Sperry Corp.*, 493 U.S. 52, 62 n. 9, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989) and *Eastern Enter. v. Apfel*, 524 U.S. 498, 538–544, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998)).

### 6. *Attorneys' fees and costs*

██ According to his deposition, plaintiff seeks "fair attorney fees and costs to be based on an estimated 30% contingency fee totaling $78,600." Plaintiff admits, however, that he does not have an attorney and has not entered into a contingency fee agreement with one. Defendant thus moves to dismiss plaintiff's claim for attorneys' fees on the ground that *pro se* plaintiffs as a matter of law cannot recover such fees. According to defendant, plaintiff's recovery is dependent upon the operation of the Equal Access to Justice Act, 28 U.S.C. § 2412 (2000) (the "EAJA"). Under the EAJA, *pro se* litigants are not entitled to recover attorneys' fees. *Phillips v. General Services Administration*, 924 F.2d 1577, 1583 (Fed.Cir.1991).

Plaintiff need not pursue attorneys' fees under the EAJA, because the Equal Pay Act, as part of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 216(b) (2000), already provides a mechanism for the award of such fees:

> The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

It is true, as plaintiff observes, that, unlike the EAJA, the FLSA does not include an express requirement that recovery of attorneys' fees be predicated on whether they were "actually incurred." *See* 28 U.S.C. § 2412(a)(1). The key to recovery of attorneys' fees is that those fees be "reasonable." *See Naekel v. Dep't of Transp.*, 845 F.2d 976, 979 (Fed.Cir.1988) (Back Pay Act is a reimbursement statute that authorizes award of "reasonable" attorneys' fees, thus precluding award to *pro se* litigant who incurred no outstanding obligation); *cf. Applegate v. United States*, 52 Fed.Cl. 751, 759 n. 11 (2002) ("[T]he Supreme Court has frequently indicated that its rulings regarding one fee-shifting statute are generally applicable to others."). Like the EAJA and almost every other fee-shifting remedial statute, the purpose of the FLSA attorneys' fee provision is to "provide an adequate economic incentive for private attorneys to take employment discrimination cases" and thereby to ensure competent legal representation of legitimate claims. *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 11 (D.C.Cir.1984). A paying attorney-client relationship therefore is assumed in the statute. *See Kay v. Ehrler*, 499 U.S. 432, 436–37, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (because purpose of FOIA to encourage private attorneys to take claims, *pro se* litigant cannot recover attorneys' fees, even if litigant is attorney). Plaintiff, proceeding *pro se*, is not entitled to attorneys' fees.

---

11. Plaintiff cites only *Aulston v. United States*, 823 F.2d 510, 513 (Fed.Cir.1987). The Federal Circuit affirmed a decision that the Claims Court lacked jurisdiction to determine whether plaintiffs, rather than the Government, were the proper owners of liquid carbon dioxide produced pursuant to a lease contract with the Government. Thus, the issue was whether they could assert a claim for a taking against the Government for its failure to return the carbon dioxide to the plaintiffs.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Plaintiff's motion for summary judgment is denied.

2. Plaintiff's Motion in *Limine* To Estop the Untimely Raising of Affirmative Defenses is denied.

3. Defendant's motion for summary judgment with respect to plaintiff's claims for breach of contract, breach of merit systems principles, and attorneys' fees is granted.

4. Defendant's motion for summary judgment with respect to its affirmative defenses under the Equal Pay Act is denied.

5. This case spiraled into wild charges once defendant filed its motion. The parties should reassess their respective positions and determine if plaintiff's claim, now pared to its essentials, is worth the time and expense of a trial. In the unlikely event that the parties do not settle, the shall file a Joint Status Report by August 30, 2002, proposing a schedule for trial.