ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Amentum Services, Inc. | )   ASBCA Nos. 63250, 63251, 63350 |
| | ) |
| Under Contract No. FA 8108-17-D-0016 - | ) |
|   Task Order No. FA8108-19-F-0013 | ) |

APPEARANCES FOR THE APPELLANT:   Daniel B. Abrahams, Esq.
        Howard A. Wolf-Rodda, Esq.
        Kirby M. Rousseau, Esq.
         Abrahams Wolf-Rodda, LLC
         Potomac, MD

APPEARANCES FOR THE GOVERNMENT:   Caryl A. Potter III, Esq.
         Air Force Deputy Chief Trial Attorney
        Nicholas T. Iliff, Jr., Esq.
         Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL
ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

The government contracted with appellant, Amentum Services, Inc.
(Amentum), for airport maintenance services at two naval air stations, and denied
Amentum's requests for contract price adjustments to account for what Amentum says
are increased costs related to employee paid time off or personal time off (PTO), or
medical or sick leave, arising from state and federal responses to COVID-19.
Amentum filed three appeals (which we consolidated but did not merge, *see generally
Avant Assessment*, LLC, ASBCA No. 58867, 16-1 BCA ¶ 36,436 at 177,601
(distinguishing consolidation from merger)), and filed a four-count consolidated
complaint. The parties each request summary judgment upon those counts,[1] which
concern: (1) Federal Acquisition Regulation (FAR) 52.222-43 (Counts I & II);[2] (2)

---

[1] Initially, only Amentum requested summary judgment. When the Board notified the
    parties that it might consider the government's opposition to Amentum's
    motion for summary judgment a cross-motion for summary judgment, the
    government also requested summary judgment. *See* FED. R. CIV. P.. 56(f)(1);
    *Abu-Shawish v. United States*, 159 Fed. Cl. 789, 799 n.9 (2022); *Puma Energy
    Honduras, S.A. De C.V.*, ASBCA No. 61966, 20-1 BCA ¶ 37,507 n.a1.

[2] Count I concerns both task orders; Count II concerns only the Lemoore Task Order.
    With respect to the Lemoore Task Order, we discern no meaningful difference
    between the two counts.

the doctrine of mutual mistake (Count III), and (3) the doctrine of constructive change (Count IV). At the parties' request, the proceedings have been bifurcated, with only entitlement currently for decision, and quantum having been deferred.

STATEMENT OF FACTS FOR PURPOSES OF THE CROSS-MOTIONS

The following is not in genuine dispute. On December 1, 2016, the Air Force awarded the contract at issue here to URS Federal Services, Inc., which is now known as Amentum. Joint Statement of Undisputed Material Facts (JS) ¶ 3. On June 28, 2018, the Air Force issued Task Order No. 52 pursuant to the contract for Amentum to provide airport maintenance services at Naval Air Station (NAS) Lemoore in California. *See* JS ¶ 5. On April 1, 2019, the Air Force issued Task Order No. 13 pursuant to the contract for Amentum to provide airport maintenance services at NAS North Island, also in California. *See* JS ¶ 6.

The contract includes the Service Contract Labor Standards clause set forth at FAR 52.222-41, SERVICE CONTRACT LABOR STANDARDS (MAY 2014). JS ¶ 8. The contract also includes FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT LABOR STANDARDS—PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) (MAY 2014), as well as FAR 52.243-1, CHANGES—FIXED-PRICE (AUG 1987), as modified by FAR 52.243-1 CHANGES—FIXED PRICE—ALTERNATE I (APR 1984). JS ¶ 9.

On July 1, 2019, Amentum entered into a Collective Bargaining Agreement (CBA) with the International Association of Machinists and Aerospace Workers (IAM) for work performed at NAS Lemoore. JS ¶ 10. The Lemoore CBA expired on February 1, 2021. *Id.* Paragraph 7.2 of the Lemoore CBA provides: "Personal medical leave will be granted in accordance with the Family Medical Leave Act, Company policy, and all state of California and federal laws." JS ¶ 11. Amentum submitted the Lemoore CBA to the government's contracting officer , who incorporated the Lemoore CBA into the Lemoore Task Order by modification on August 1, 2019. JS ¶ 12.

On June 30, 2020, Amentum entered into a CBA with IAM for work performed at NAS North Island. JS ¶ 13. The North Island CBA expired on June 30, 2022. *Id.* Amentum submitted the North Island CBA to the contracting officer, who incorporated the North Island CBA into the North Island Task Order by modification on October 30, 2020. JS ¶ 14. Pursuant to Article 11.00 of the North Island CBA, "personal time off" is available to "employees covered by" the North Island CBA for, among other things, "personal illness [and] doctor and dental appointments." JS ¶ 15. The North Island CBA does not contain a provision similar to the provision found in the Lemoore CBA that "[p]ersonal medical leave will be granted in accordance with [] all state of California [] laws."

2

On January 20, 2020, the Centers for Disease Control reported the first laboratory-confirmed United States cases of COVID-19.  JS ¶ 16.  On May 13, 2020, Amentum wrote to the contracting officer about the impact of COVID-19 and resultant quarantine of some contractor employees.  JS ¶ 17.  Amentum provided notice that "Amentum is [] experiencing delays in bringing personnel on-site due to 14 day (sic) Government imposed quarantine periods, other local or State Government imposed restrictions, or other various issues."  *Id.*

On September 9, 2020, during Option Year Two of the Lemoore Task Order and Option Year One of the North Island Task Order, the California State Legislature enacted California Assembly Bill 1867 which provides:

> A covered worker is entitled to 80 hours of COVID-19 supplemental paid sick leave, if the covered worker satisfies either of the following criteria:
>
> (i) The hiring entity considers the covered worker to work "full time."
>
> (ii) The covered worker worked or was scheduled to work, on average, at least 40 hours per week for the hiring entity in the two weeks preceding the date the covered worker took COVID-19 supplemental paid sick leave.

JS ¶ 18.  Pursuant to Assembly Bill 1867, a worker is "covered" if he or she "is employed by a hiring entity, as defined in subparagraph (A) of paragraph (3)."  JS ¶ 19.  Subparagraph A defines such hiring entities to be:

> any kind of private entity whatsoever, including, but not limited to, any kind of corporation, partnership, limited liability company, limited liability partnership, or any other kind of business enterprise that has 500 or more employees in the United States.  For purposes of this paragraph, Section 826.40(a)(1) and (2) of Title 29 of the Code of Federal Regulations shall be used to determine the number of employees that the hiring entity employs.

> *Id.*

Because Assembly Bill 1867 expired on December 31, 2020, the California General Assembly passed Senate Bill 95, which continued and expanded upon the COVID-19 sick leave required by California Assembly Bill 1867.  JS ¶ 20.  Senate Bill

3

95 retroactively applied to January 1, 2021, and COVID-19 sick leave benefits expired on September 30, 2021. *Id.*

On September 30, 2020, and November 4, 2020, the Navy issued internal guidance that describes the Navy's COVID-19 quarantine process and states:

> Required action when any military, civilian, or contractor exhibits signs or symptoms of COVID-19 infection.
>
> ...
>
> Close contacts must remain in quarantine for 14 days even if they test negative. Some individuals may test negative for several days after exposure and take up to 14 days to exhibit symptoms.

*See* JS ¶¶ 21, 23. This guidance was not sent to Amentum by the contracting officer or anyone on the contracting officer's behalf. JS ¶ 22. A subsequent version of this guidance provides:

> Close contacts who subsequently test positive will be isolated and treated under COVID-19 case protocols. Close contacts attached to operational units must remain in quarantine for 14 days even if they test negative. Some individuals may test negative for several days after exposure and it may take up to 14 days to become covid-19 positive or exhibit symptoms.

JS ¶ 24. A May 21, 2021 update to the guidance provides:

> Close contacts who have been fully vaccinated and individuals who have tested positive in the past three months do not need to quarantine. Asymptomatic personnel who are not immunized and are suspected of exposure shall quarantine in accordance with (IAW) CDC and local medical guidance.

JS ¶ 25. On June 2, 2021, the Navy issued its final internal guidance, repeating the guidance provided May 21, 2021. JS ¶ 26. All versions of that guidance state:

> CONTRACTOR PERSONNEL. THIS GUIDANCE DOES NOT ALTER, MODIFY, OR CHANGE THE TERMS AND CONDITIONS OF ANY DOD

4

CONTRACT.  COMMANDERS MUST ENSURE ROM AND MEDICAL SCREENING GUIDANCE GIVEN TO DOD CONTRACTOR PERSONNEL CAN BE APPLIED CONSISTENT WITH THE PERTINENT CONTRACT AND APPLICABLE PROCUREMENT LAW, REGULATION, AND POLICY.

JS ¶ 27.  Although the contract and the task orders were administered by the Department of the Air Force, the Air Force's contracting officer did not issue written contract modifications or orders implementing the Navy's COVID-19 guidance.  *See* JS ¶ 29.

Amentum incurred additional cost for the provision of sick medical leave required under the Lemoore CBA.  *See* government's January 10, 2023 Statement of Genuine Issues of Material Fact (responding to Amentum's statements) ¶ 19; n.5, *infra*.  Amentum documented these additional costs and submitted them to the Air Force.  *See* January 10, 2023 Statement ¶ 19.  Those costs can be found in Tab 15 in the Air Force's Rule 4 file.  *See id.*

On November 18, 2020, Amentum sent a letter to the contracting officer concerning the effect of the California Legislature on the North Island Task Order.  JS ¶ 30.  The letter advised the contracting officer of Amentum's intent to submit a Request for Equitable Adjustment (REA) for the increased costs of furnishing COVID-19 sick leave.  *Id.*  On October 22, 2021, with respect to the North Island Task Order, Amentum submitted a certified claim for $528,884.03, or, alternatively, a Service Contract Act (SCA)[3] Price Adjustment for the increased costs of comply with the Wage Determinations at North Island, in the amount of $353,778.00.  JS ¶ 33.  The contracting officer denied that claim on January 14, 2022.  *Id.*  Amentum filed a notice of appeal with the Board on April 12, 2022; on April 14, 2022, the Board docketed that appeal as ASBCA No. 63250.  *Id.*

On May 12, 2021, with respect to the Lemoore Task Order, Amentum submitted an REA for its Lemoore costs to the contracting officer; that REA was denied on June 22, 2021.  JS ¶ 31.  On October 22, 2021, Amentum submitted a certified claim in the amount of $963,757.85 or, alternatively, an SCA Price Adjustment for the increased costs of complying with the Wage Determinations at NAS Lemoore, in the amount of $644,670.37 plus interest.  JS ¶ 32.  The contracting officer denied the claim on January 18, 2022.  *Id.*  Amentum filed a notice of appeal to the Board on April 12, 2022; on April 14, 2022, the Board docketed that appeal as ASBCA No. 63251.  *Id.*

---

[3] 41 U.S.C. § 351-358.

On April 12, 2022, Amentum presented a certified claim to the contracting officer, further explaining its original SCA price adjustment and changes clause claims, and asserting an alternative theory of entitlement for the costs sought in the North Island and Lemoore claims under a mutual mistake theory. JS ¶ 35. The contracting officer denied that claim on May 13, 2022. *Id.* Amentum filed a notice of appeal to the Board on July 18, 2022; the Board docketed that appeal as ASBCA No. 63350. *Id.*

## DECISION

Summary judgment will be granted if a moving party has shown that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Pangea, Inc.*, ASBCA Nos. 62561, 62640, 22-1 BCA ¶ 38,026 at 184,663; *see* FED. R. CIV. P. 56(a). To counter a motion for summary judgment, more than mere assertions are necessary. *Thorington Elec. and Constr. Co.*, ASBCA No. 56895, 10-2 BCA ¶ 34,558 at 170,418. Conclusory assertions do not raise a genuine issue of fact. *Id.* The non-movant must submit, by affidavit or otherwise, specific evidence that could be offered at trial. *Id.* Failing to do so may result in the motion being granted. *Id.*

*ASBCA No. 63250 (North Island) and ASBCA No. 63251 (Lemoore): FAR 52.222-43 Price Adjustments, Changes Clause*

### I. *FAR 52.222-43 Price Adjustments (Counts I & II)*

In Counts I & II of the complaint,[4] Amentum claims recovery for additional, COVID-19 related sick leave, that Amentum provided to its employees at NAS Lemoore, as well as additional, COVID-19 related PTO, that Amentum provided to its employees at NAS North Island, each pursuant to FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT LABOR STANDARDS—PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS), which provides:

(a) This clause applies to both contracts subject to area prevailing wage determinations and contracts subject to collective bargaining agreements.

(b) The Contractor warrants that the prices in this contract do not include any allowance for any contingency to cover increased costs for which adjustment is provided under this clause.

(c) The wage determination, issued under the Service Contract Labor Standards statute, (41 U.S.C. chapter 67), by the Administrator, Wage and Hour Division, U.S. Department of Labor, current on the anniversary date of a

---

[4] Count I addresses Lemoore and North Island; Count II addresses only Lemoore.

multiple year contract or the beginning of each renewal option period, shall apply to this contract.  If no such determination has been made applicable to this contract, then the Federal minimum wage as established by section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended, (29 U.S.C. 206) current on the anniversary date of a multiple year contract or the beginning of each renewal option period, shall apply to this contract.

(d) The contract price, contract unit price labor rates, or fixed hourly labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that the increase is made to comply with or the decrease is voluntarily made by the Contractor as a result of:

(1) The Department of Labor wage determination applicable on the anniversary date of the multiple year contract, or at the beginning of the renewal option period.  For example, the prior year wage determination required a minimum wage rate of $4 per hour.  The Contractor chose to pay $4.10. The new wage determination increases the minimum rate to $4.50 per hour.  Even if the Contractor voluntarily increases the rate to $4.75 per hour, the allowable price adjustment is $.40 per hour;

(2) An increased or decreased wage determination otherwise applied to the contract by operation of law; or

(3) An amendment to the Fair Labor Standards Act of 1938 that is enacted after award of this contract, affects the minimum wage, and becomes applicable to this contract under law.

(e) Any adjustment will be limited to increases or decreases in wages and fringe benefits as described in paragraph (d) of this clause, and the accompanying increases or decreases in social security and unemployment taxes and workers' compensation insurance, but shall not otherwise include any amount for general and administrative costs, overhead, or profit.

(f) The Contractor shall notify the contracting officer of any increase claimed under this clause within 30 days after receiving a new wage determination unless this notification period is extended in writing by the contracting officer.  The Contractor shall promptly notify the contracting officer of any decrease under this clause, but nothing in the clause shall preclude the Government from asserting a claim within the period permitted by law. The notice shall contain a statement of the amount claimed and the change in fixed hourly rates (if this is a time-and-materials or labor-hour contract), and any relevant supporting data, including payroll records, that the contracting

7

officer may reasonably require.  Upon agreement of the parties, the contract price, contract unit price labor rates, or fixed hourly rates shall be modified in writing.  The Contractor shall continue performance pending agreement on or determination of any such adjustment and its effective date.

### a. Lemoore CBA:  ASBCA No. 63251

Amentum seeks $644,670.37 pursuant to FAR 52.222-43 for costs allegedly incurred at NAS Lemoore (compl. ¶¶ 109-110).  It is not in genuine dispute that, within the meaning of the Lemoore CBA, Amentum experienced an actual increase in applicable fringe benefits in the form of increased PTO required under California law related to the COVID-19 pandemic and the Navy's 14-day quarantine policy.  That entitles Amentum within the meaning of FAR 52.222-43 to the cost associated with that increase.  *See* FAR 52.222-43(a), (d)(1), (e); 29 C.F.R ¶ 4.53 (1996) (describing "fringe benefits" to include "sick leave pay"); *Lear Siegler Servs., Inc. v. Rumsfeld*, 457 F.3d 1262, 1268-69 (Fed. Cir. 2006) (reversing denial of summary judgment to contractor and holding that, pursuant to FAR 52.222-43, nominally unchanged CBA required contractor "to pay whatever was necessary for it to meet its obligations to its employees, in light of changes in the costs of providing them with an agreed-upon level of health care benefit"); *cf. United States v. Serv. Ventures, Inc.*, 899 F.2d 1, 3 (Fed. Cir. 1990) (additional vacation pay); *ARCTEC Servs.*, ASBCA No. 56444 *et al.*, 11-1 BCA ¶ 34,743 at 171,037-38 (severance costs); *Holmes & Narver Servs., Inc.*, ASBCA Nos. 38867, 38868, 90-3 BCA ¶ 23,198 at 116,421 (premium pay for additional holiday observances); *Gov't Contractors, Inc.*, ASBCA No. 24112, 80-1 BCA ¶ 14,281 at 70,331, *aff'd on reconsid.*, 80-1 BCA ¶ 14,454 at 71,240 (vacation pay).  The amount of that recovery is a matter for the quantum stage of these proceedings.[5]  *See Holmes & Narver*, 90-3 BCA ¶ 23,198 at 116,419-20 n.6; *Gov't Contractors*, 80-1 BCA ¶ 14,281 at 70,331.

---

[5] In its opposition to Amentum's motion for summary judgment, the government disputes whether Amentum "has demonstrated, will demonstrate, or can demonstrate *any* increased costs" (gov't opp. at 1 (emphasis in original)).  Although we do not find it necessary for Amentum to demonstrate such costs at this, the entitlement stage of these bifurcated proceedings, we note that in response to Amentum's assertion, supported by the sworn declaration of Josh Frankel, Amentum's Vice-President of Operations (Frankel decl. ¶ 1), that Amentum had incurred substantial additional cost for the provision of sick leave required under the Lemoore CBA, and that those costs could be found in tab 15 of the Air Force's Rule 4 file (Appellant's Supplemental Statement of Undisputed Facts ¶ 19 (citing Frankel decl. at ¶ 35)), at which tab are found tabulations of costs.  The government did not counter with its own affidavit or citation of record material but only stated, referencing the three sentences of Amentum's nineteenth proposed undisputed fact:  "As to the first sentence, this

*Parsons Government Services, Inc.*, ASBCA No. 61630, 20-1 BCA ¶ 37,655, is not to the contrary. There we rejected a claim that a court-ordered payment of employee claims (pursuant to a court-approved settlement of claims) provided the basis for a FAR 52.222-43 price adjustment, pointing out that "the settlement of [those claims] had nothing to do with any [] wage determinations," and rejected also the idea that independent state requirements mandated compensation under FAR 52.222-43 for increases in a contractor's costs. *See id*. at 182,816-17. Here, however, the Lemoore CBA, which is the applicable wage determination under the contract, provides that "[p]ersonal medical leave will be granted in accordance with . . . all state of California [] laws," providing the basis for compensation under FAR 52.222-43. Whether the increase in personal medical leave was the result of a sovereign act – namely, actions of the Navy or California responding to COVID-19 – is irrelevant to whether Amentum may recover pursuant to FAR 52.222-43. *Cf. Holmes & Narver*, 90-3 BCA ¶ 23,198 at 116,420 (sovereign-act nature of enactment of Birthday of Martin Luther King, Jr. Holiday irrelevant in view of contract provisions addressing federal holidays).

For these reasons, we conclude that Amentum is entitled to judgment as a matter of law, pursuant to FAR 52.222-43(d), to an adjustment to reflect Amentum's actual increase in applicable fringe benefits in the form of COVI-19 related sick leave at NAS Lemoore, with quantum to be determined.

The government contends that Amentum's notice to the government regarding the additional medical leave was untimely under FAR 52.222-43(f) with respect to NAS Lemoore, barring any recovery (gov't opp. at 11). Notice requirements have been ignored by this Board in some cases where there was no prejudice to the government. *ACS Constr. Co.*, ASBCA No. 33232, 87-1 BCA ¶ 19,609 at 99,209 (citing *C.H. Leavell & Co.*, ASBCA No. 16099, 72-2 BCA ¶ 9,694 at 45,269); *C.H. Leavell*, 72-2 BCA ¶ 9,694 at 45,269 (citing cases). Here, the government does not

allegation is in dispute. As to the second and third sentences, it is disputed that Appellant incurred additional costs." Government's January 10, 2023 Statement of Genuine Issues of Material Fact ¶ 19. Consequently, if it is necessary for Amentum to have demonstrated the incurrence of costs at this stage of the proceedings, we find (without quantifying them) no genuine dispute that Amentum has incurred such costs. *Cf. Great Am. Constr. Co.*, ASBCA Nos. 60437, 60501, 16-1 BCA ¶ 36,460 at 177,679 (where non-movant neither pointed to nor presented any evidence whatsoever to support its opposition to summary judgment, non-movant presented no issue for trial).

address whether it was prejudiced by untimely notice; consequently, we reject the government's reliance upon FAR 52.222-43(f). *See Stobil Enters.*, CBCA No. 5698, 19-1 BCA ¶ 37,428 at 181,915 (concerning FAR 52.222-43(f), Civilian Board denied summary judgment to government; government did not argue prejudice from lack of timely notice); *DTS Aviation Servs., Inc.*, ASBCA No. 56352, 09-2 BCA ¶ 34,288 at 169,381 (FAR 52.222-43(f), denying summary judgment where notice and prejudice presented "genuine, material disputed facts on the record"); *cf. Decker & Co., GmbH*, ASBCA No. 35051, 88-3 BCA ¶ 20,871 at 105,543 (absent government demonstration of prejudice, untimely notice under Suspension of Work clause did not bar contractor's recovery, citing cases).

### b. *North Island CBA:  ASBCA No. 63250*

We arrive at a different result with respect to North Island.  Amentum seeks $353,778 pursuant to FAR 52.222-43 for costs allegedly incurred at NAS North Island (compl. ¶ 109).  However, whereas the Lemoore CBA provides that "[p]ersonal medical leave will be granted in accordance with . . . *all state of California [] laws*," Amentum points to no such provision in the North Island CBA.  Consequently, with respect to the North Island Task Order, we are not persuaded that the change in California law requiring the provision of COVID-19 medical leave, while, presumably, binding upon appellant, constitutes an increased wage determination for purposes of federal law.  *Cf. Aleman Food Servs., Inc. v. United States*, 994 F.2d 819, 822-23 (Fed. Cir. 1993) (no entitlement to price adjustment; contractor's "increased workers' compensation and unemployment insurance taxes were solely the result of changes in Texas law"; "none of the [Department of Labor wage] determinations applicable at the beginning of the option years in question say anything about workers' compensation or unemployment insurance"); *Parsons*, 20-1 BCA ¶ 37,655 at 182,817 (no entitlement to price adjustment; California court's approval of contractor's settlements of employees' claim, and court order that payment be made, "did not convert the settlements into an increased [] wage determination").  Accordingly, we conclude that Amentum is not entitled to an adjustment pursuant to FAR 52.222-43 for increased costs allegedly incurred at NAS North Island.[6]

### c. *Conclusion*

For these reasons,

---

[6] This opinion addresses the legal theories that the parties have raised; consequently, we do not address issues concerning FAR 52.222-62, Paid Sick Leave Under Executive Order 13706 (Jan 2017), or the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281.

(1) With respect to ASBCA 63250 and Count I, (a) Amentum's motion for summary judgment is denied with respect to the North Island Task Order, (b) the government's cross-motion for summary judgment is granted with respect to the North Island Task Order, (c) judgment is entered that Amentum is *not* entitled pursuant to FAR 52.222-43(d) to an adjustment to reflect any actual increase in applicable fringe benefits in the form of COVID-19 related sick leave at NAS North Island, and (d) the appeal is denied in that part; and

(2) With respect to ASBCA 63251, and Counts I and II, (a) Amentum's motion for summary judgment is granted with respect to the Lemoore Task Order, (b) the government's cross-motion for summary judgment is denied with respect to the Lemoore Task Order, (c) judgment is entered that Amentum *is* entitled pursuant to FAR 52.222-43(d) to an adjustment to reflect an actual increase in applicable fringe benefits in the form of COVID-19 related sick leave at NAS Lemoore, and (d) the appeal is granted in that part, with quantum to be determined.

## II.     Constructive Change (Count IV):  Lemoore and North Island

In Count IV of the complaint, Amentum seeks in the alternative $963,757.85 for costs allegedly incurred at NAS Lemoore, and $528,884.03 for costs allegedly incurred at NAS North Island, under the changes clause (compl. ¶¶ 95-106, 111), saying that the Navy "handed down operational guidance that provided for a range of COVID-19 policies and procedures," including quarantines, that "caused a substantial increase in absenteeism that . . . required Amentum to compensate its employees for absences in the form of Personal Time and/or paid medical leaves of absence" (app. mot. at 37-39).  The government relies upon the sovereign acts doctrine as a complete defense to Count III (gov't opp. at 2), which defense requires that the government prove that (1) the governmental action was public and general; and (2) the act must render performance of the contract impossible.[7]  *APTIM Fed. Servs., LLC*, ASBCA No. 62982, 22-1 BCA ¶ 38,127 at 185,218.

---

[7] Amentum says that the government's assertion of the sovereign acts defense is untimely and therefore waived, because the government did not assert it in its answer to the complaint (app. reply at 4-6).  We find that position ironic given Amentum's concurrent position – with which we agree – that the government may not rely upon untimely contractor notice FAR 52.222-43(f) absent a showing of prejudice.  Similarly, failure to raise an affirmative defense by responsive pleading does not always result in waiver; the determinative factor is whether there is unfair surprise or prejudice.  *Shell Oil Co. v. United States*, 123 Fed. Cl. 707, 719 (2015), *aff'd*, 896 F.3d 1299 (Fed. Cir. 2018); *accord*

An act is public and general if it is general and applies to all persons. *JE Dunn Constr. Co.*, ASBCA No. 62936, 22-1 BCA ¶ 38,123 at 185,191-92. In order to determine if the government's act is public and general, we examine whether the act is specifically directed at nullifying contract rights, and whether the act applies exclusively to the contractor or more broadly to include other parties not in a contractual relationship to the government. *Id.* We discern from the parties' joint statement of undisputed facts that there is no genuine dispute that the Navy's 14-day quarantine policy was public and general, in that it was not specifically directed at nullifying contract rights, and that it did not apply exclusively to Amentum as opposed to more broadly to parties not in a contractual relationship to the government. *Cf. APTIM*, 22-1 BCA ¶ 38,127 at 185,218-19 (COVID-19-related closure of Air Force base to non-operationally urgent personnel was public and general); *JE Dunn*, 22-1 BCA ¶ 38,123 at 185,191-92 (COVID-19-related quarantine requirement at Fort Drum was public and general).

Although Amentum points out that the government has not addressed the "impossibility" component of the sovereign acts defense, neither did the government in *APTIM*, and there we found that omission was no bar to reliance upon the sovereign acts defense. *See APTIM*, 22-1 BCA ¶ 38,127 at 185,218 (noting that "since the [government] declined to prove both prongs of the test, appellant argues it must automatically lose access to this affirmative defense," but that "[t]his is too technical a reading" of *Klamath Irrigation Dist. v. United States*, 635 F.3d 505 (Fed. Cir. 2011)). Rather than finding that the government had waived the sovereign acts defense, we recited and applied the following four-part test for impossibility:

> (i)     a supervening event made performance impracticable;

> (ii)    the non-occurrence of the event was a basic assumption upon which the contract was based;

---

*Hauschild v. United States*, 53 Fed. Cl. 134, 139 (2002). Although unfair prejudice from a late assertion of an affirmative defense may be present once significant activity, such as discovery or a hearing, has concluded, *see Entergy Nuclear Fitzpatrick, LLC v. United States*, 93 Fed. Cl. 739, 746 (2010), at this, the summary judgment stage (at which, apparently, no discovery has yet been conducted), no such prejudice appears, nor has it even been alleged. Consequently, we allow the government's assertion of its sovereign acts defense.

(iii)     the occurrence of the event was not [the invoking party's] fault; and

(iv)     the invoking party did not assume the risk of occurrence.

*APTIM*, 22-1 BCA ¶ 38,127 at 185,219. We held that:

> Here, [APTIM] was excluded from Arnold Air Force Base equally along with many other contractors by act of the base commander, in pursuit of a larger public health danger, which itself threatened a national security impact []. *This exclusion made performance of each party's contractual obligations impossible during the time period at issue.*

*Id.* (emphasis added). We concluded that, both prongs of the sovereign acts defense being present, the sovereign acts "defense removed the [government's] liability for the work stoppage that APTIM suffered." *Id.*

Consistent with the holding in *APTIM*, here we conclude that the Navy's 14-day COVID-19 related quarantine requirements made performance of each party's contractual obligations impossible during the particular 14-day time periods at issue; consequently, we conclude that both prongs of the sovereign acts defense being present, the sovereign acts defense removes the government's liability under the changes clause for any increase in costs that Amentum suffered as a result of the Navy's 14-day COVID-19 related quarantine policy.

For these reasons, we deny Amentum's motion for summary judgment that it is entitled to recover pursuant to the doctrine of constructive change, grant summary judgment in favor of the government upon Count III, and deny ASBCA Nos. 63250, 63251 in those parts.

*ASBCA No. 63350 (Count III): Mutual Mistake, Lemoore and North Island*

In ASBCA No. 63350 and Count III of the complaint, Amentum seeks in the alternative $963,757.85 for costs allegedly incurred at NAS Lemoore, and $528,884.03 for costs allegedly incurred at NAS North Island (compl. ¶¶ 78-92, 111), saying that COVID-19 and subsequent state and federal law concerning COVID-19 constitute a mutual mistake of fact entitling it to recovery. However, to establish a mutual mistake of fact, Amentum must prove by clear and convincing evidence that: (1) the parties were mistaken in their belief regarding a fact; (2) the mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material

effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation. *Parsons Gov't Servs., Inc.*, 20-1 BCA ¶ 37,655 at 182,817. Additionally, a mistake claim must be premised upon an erroneous belief by the parties about a fact existing at the time of contracting; assumptions about future facts cannot establish a mutual mistake claim. *Id.* The party seeking reformation must allege that he held an erroneous belief as to an *existing* fact. *See AECOM Gov't Servs., Inc.*, ASBCA No. 56861, 11-1 BCA ¶ 34,667 at 170,771. The erroneous belief must relate to facts as they existed at the time of the making of the contract. *Id.* (quoting Restatement (Second) of Contracts § 151 cmt. a (1981)). Moreover, a mistake of law is not a ground for reformation. *Parsons Gov't Servs.*, 20-1 BCA ¶ 37,655 at 182,817. And a law enacted after parties enter into a contract is not a basis for reforming the contract under the mutual mistake doctrine.[8] *See AECOM*, 11-1 BCA ¶ 34,667 at 170,771; *River Ridge Dev. Auth.*, ASBCA No. 58981, 16-1 BCA ¶ 36,314 at 177,058.

Here, Amentum's mutual mistake argument relies upon events – COVID-19 and subsequent, related state and federal actions – that Amentum admits did not exist at the time it contracted with the government (*see* app. mot. at 45-47). Therefore, those events could not have been within the contemplation of the parties when they entered into the contract, because they were not facts in existence until after award. Consequently, those events do not support a claim for reformation upon the basis of mutual mistake. Accordingly, we deny Amentum's motion for summary judgment that it is entitled to recover pursuant to the doctrine of mutual mistake, grant summary judgment in favor of the government upon Count IV, and deny ASBCA No. 63350.

---

[8] Amentum cites *Security Associates International Inc.*, DOTCAB No. 1340, 84-2 BCA ¶ 17,444 at 86,843, 86,857-59 (app. mot. at 46-49), as well as an opinion of a federal district court, neither of which, of course, is binding upon this Board.

<u>CONCLUSION</u>

In ASBCA No. 63250, Amentum's motion for summary judgment is denied, the government's cross-motion for summary judgment is granted, and the appeal is denied.

In ASBCA No. 63251, Amentum's motion for summary judgment is granted in part and denied in part, the government's cross-motion for summary judgment is granted in part and denied in part, judgment is entered that Amentum is entitled pursuant to FAR 52.222-43 to the cost of increased COVID-related medical leave provided at NAS Lemoore, the appeal is sustained in part and denied in part, and the appeal is returned to the parties for resolution of quantum consistent with this opinion.

In ASBCA No. 63350, Amentum's motion for summary judgment is denied, the government's cross-motion for summary judgment is granted, and the appeal is denied.

Dated:  February 5, 2024

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63250, 63251, 63350, Appeals of Amentum Services, Inc., rendered in conformance with the Board's Charter.

Dated:  February 6, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals